Jane F. DOE, and, Jane
I. Doe, Plaintiffs,

v.

SHULTS–LEWIS CHILD AND
FAMILY SERVICES, INC.,
Appellee (defendant).

No. 64S05–9712–CV–658.

Supreme Court of Indiana.

Oct. 8, 1999.

Gregory Bowes, Esquire, Bowes, Perkins & Hutchinson, P.C., Indianapolis, IN, Attorney for Appellant.

Mark A. Lienhoop, Esquire, Newby, Lewis, Kaminski & Jones, LaPorte, IN, Attorneys for Appellee.

ON PETITION TO TRANSFER.

SELBY, J.

We grant transfer in this case to clarify 1) our decision in *Fager v. Hundt*, 610 N.E.2d 246 (Ind.1993), and 2) the role of expert opinion evidence in cases where plaintiffs claim that repressed memory of childhood sexual abuse has caused them to delay filing until after the statutory period of limitations has expired. In so doing, we shall also discuss the degree to which the reliability of expert opinion testimony must be proved at the summary judgment stage of proceedings.

*Factual Background*

Plaintiffs Jane I. Doe (Jane I.) and Jane F. Doe (Jane F.) brought suit against Shults–Lewis Child & Family Services, Inc. (Shults–Lewis), a non-profit corporation which owns and operates a children's home in Valparaiso, Indiana, on August 16, 1990. The plaintiffs allege that between 1960 and 1969, while foster children at the Shults–Lewis home, they were sexually abused on hundreds of occasions by a Shults–Lewis employee, Rodney Grantham.

Plaintiff Jane F. became a resident at the home in 1960, when she was eight

years old, and left in 1966. She alleges that Grantham had sexual intercourse with her hundreds of times during this period, and at age fourteen, gave her quinine pills to induce an abortion. Jane F. did not bring suit until 1990, however, because she did not make the causal connection between her psychological distress and the sexual abuse until 1990. Jane F. testified that when she recognized this connection, she confronted Grantham, who admitted both that he had abused her and that he had given her pills to induce an abortion, thus corroborating Jane F.'s childhood memories of vaginal bleeding and severe vaginal pains. Jane F. testified that, at the time, she alerted houseparents Lester Allen and Keith Kreh, as well as secretary Leonard Blake, that Grantham was touching her inappropriately. Grantham also testified that Shirley Kreh, Keith Kreh's wife and also a houseparent at the home, confronted Grantham about the sexual abuse within the period of abuse, at which time he denied the allegation.

Jane I. was also sexually abused by Grantham on hundreds of occasions. She, like Jane F., entered Shults–Lewis in 1960, at age nine, and lived there until 1969. Jane I. claims that she suppressed all memories of the abuse until 1990, when conversations with Jane F., other members of the group home, and Grantham triggered memories of the events. Jane I. still has no recollection of the events themselves, but she now remembers the circumstances surrounding the events. She remembers being held down on a bed by Grantham for a period of time. She remembers being taken to different parts of the foster home to be alone with Grantham. In one instance, Jane I. recalls that Grantham took her to a part of the building and was alone with her, she believes in one of the infirmary rooms. She remembers leaving this area, and remembers blood running down her leg, but has no recollection of what happened in that room. She remembers taking pills given to her by Grantham which induced intense pain and vaginal bleeding. She reported inappropriate behavior to another Shults–Lewis employee, Lester Allen, who told her that Grantham was "just trying to be friendly." (R. at 58.) Grantham admits that he had sex with Jane I. between fifty and seventy-five times, touched Jane I. inappropriately hundreds of times, and gave her quinine pills to induce an abortion when he feared he had impregnated Jane I.

*Procedural Background*

The Plaintiffs filed suit against Shults–Lewis on August 16, 1990, charging Shults–Lewis with personal injuries, and asking for compensatory as well as punitive damages. The trial court granted Shults–Lewis's motion for summary judgment, asserting that the Plaintiffs were barred from bringing suit by the statute of limitations, Indiana Code § 34–1–2–5. This statute of limitation bars a suit based on injuries that occurred in childhood unless brought within two years of the child reaching age eighteen. We remanded, directing the trial court to reconsider their decision in light of *Fager v. Hundt,* 610 N.E.2d 246 (Ind.1993), a childhood sexual abuse case also involving claims of repressed memories. After remand and further discovery, Shults–Lewis again motioned for summary judgment, asserting that the Plaintiff had failed to establish the elements necessary to invoke the doctrine of fraudulent concealment and toll the statute of limitations as dictated by *Fager.* The trial court again entered summary judgment for Defendant.

The Plaintiffs again appealed and the Court of Appeals reversed as to Jane I. only, finding that fraudulent concealment had been sufficiently invoked by Jane I. This finding was based on the belief that Jane. I.'s expert opinion affidavit raised a material factual dispute regarding whether Jane I.'s memory had actually been obscured due to the fraudulent acts of Defendant, thus precluding summary judgment. *See Cole v. Shults–Lewis*

*Child and Family Servs., Inc.*, 677 N.E.2d 1069 (Ind.Ct.App.1997). The Court of Appeals entered this finding without ruling on the reliability of the expert opinion, believing that Shults–Lewis had waived this argument. *See id.* The Court of Appeals then granted rehearing in order to address the question of whether, had Shults–Lewis adequately objected to the reliability of Plaintiff's expert opinion affidavit, this affidavit nonetheless created a question of fact which would preclude summary judgment. *See Cole v. Shults–Lewis Child and Family Servs., Inc.*, 681 N.E.2d 1157 (Ind.Ct.App. 1997). The Court of Appeals held that the expert affidavit did raise a question of fact regarding whether the plaintiff had repressed her memory, because *Fager* did not require that scientific validity be "established" in order to survive summary judgment, but rather required only that a plaintiff alleging repressed memories "provide expert testimony 'supporting' the scientific validity of the phenomenon." *Id.* at 1160.

### Discussion

We grant transfer in this case to clarify application of *Fager* to cases where defendant is not plaintiff's parent. We also grant transfer to discuss the proper role of expert opinion evidence, in cases where repressed memory is advanced, as an explanation for the delayed commencement of a cause of action. We addressed this issue previously in *Fager*, where we impliedly required expert opinion evidence in these types of cases. We revisit this issue for two purposes. The first is to correct a misconception of the Court of Appeals as to the purpose of expert opinion evidence in these types of cases. The second is to determine the information which must be contained in the expert opinion affidavit in order to survive summary judgment.

### Fager v. Hundt

In *Fager v. Hundt*, 610 N.E.2d 246 (Ind. 1993), this Court was asked under what circumstances a plaintiff could bring a claim of childhood sexual abuse against a parent outside of the statute of limitations period. The plaintiff in *Fager* alleged that she had only recently discovered the connection between her parent's intentional felonious conduct and the injuries she incurred. She brought her claim twenty-two years after the alleged abuse occurred, fifteen years after attaining the age of majority. *See id.* at 248. The defendant in *Fager* asserted that the plaintiff's claim was barred by Indiana Code § 34–1–2–5, which disallows claims arising from childhood injuries unless brought within two years of attaining the age of majority.[1] The plaintiff urged this Court to apply the discovery rule and toll this statute of limitations because she was unable to discover the cause of action until the period of limitations had run. This Court declined to apply the discovery rule, instead finding that in cases where the plaintiff claims repressed memories of childhood sexual abuse, the doctrine of fraudulent concealment should be available to the plaintiff to estop the defendant from asserting the statute of limitations. *Id.* at 251.

Fraudulent concealment is an equitable doctrine that operates to estop a defendant from asserting the statute of limitations as a bar to a claim whenever the defendant, by his own actions, prevents the plaintiff from obtaining the knowledge necessary to pursue a claim. *See id.* (citations omitted). In *Fager*, we held that this doctrine "should be available to the plaintiff to estop a defendant from asserting the

1. Indiana Code § 34–1–2–5 (1992) read as follows: "Any person being under legal disabilities when the cause of action accrues may bring his action within two (2) years after the disability is removed." Indiana Code § 1–1–4–5(21) (1992) defined "under legal disabilities" to include those persons "less than eighteen (18) years of age, mentally incompetent, or out of the United States." Therefore, according to § 34–1–2–5, a plaintiff has two years after turning age eighteen in which to bring a claim based on injuries occurring during childhood.

statute of limitations 'when he has, either by deception or by a violation of duty, concealed from the plaintiff material facts thereby preventing the plaintiff from discovering a potential cause of action.'" *Id.* When this occurs, equity will toll the statute of limitations until the equitable grounds cease to operate as a reason for delay. *See id.* at 251; *Burks v. Rushmore,* 534 N.E.2d 1101, 1105 (Ind.1989).

 Where an adult plaintiff alleges that a parent engaged in tortious conduct against the plaintiff as a child, the plaintiff has the burden of establishing that the parent engaged in intentional felonious conduct and must invoke the equitable doctrine by pointing to facts "showing that her lack of memory resulted from a concealment caused by the defendant's deception or breach of duty." *Fager,* 610 N.E.2d. at 252. The equitable grounds cease as a reason for delay when that "person, once becoming an adult, knows or should have discovered that a childhood injury was sustained as a result of the defendant's tortious conduct." *Id.* at 251. A plaintiff claiming that repressed memory caused a delay in filing suit against his or her parent must therefore show that the defendant's breach of duty or wrongful conduct such as deception caused them to repress the memory of the intentional felonious conduct, and must also show that the claim was brought within a reasonable amount of time after the memories were recovered.

This framework was introduced for the first time in *Fager.* The defendant in *Fager* had asserted a statute of limitations defense in a motion for summary judgment. We found that the plaintiff had failed to meet her burden of pointing to those acts of the defendant which triggered the fraudulent concealment exception. We also found that because "plaintiff submitted no affidavits or depositions of qualified witnesses providing expert opinion to support the scientific validity of repressed memory and to establish that her normal powers of perception and recol-

lection had been obscured by the phenomenon as a result of her father's sexual acts with her," she was unable to show that the fraudulent act actually delayed the commencement of her claim. *Id.* at 252. However, because the doctrine of fraudulent concealment was unavailable to the plaintiff at the time she brought her claim, the case was remanded for reconsideration.

*Standard of Review*

 This case comes before us on appeal from a summary judgment motion. The standard of review for a summary judgment motion on appeal is the same standard applied by the trial court; summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *See* Ind. Trial Rule 56(C); *Shell Oil Co. v. Lovold Co.,* 705 N.E.2d 981, 983–84 (Ind.1998). All facts and any reasonable inferences drawn from those facts must be resolved in favor of the nonmoving party. *See id.* at 984 (citation omitted). The burden is on the moving party to prove the absence of any genuine material facts. *See id.* When a statute of limitations defense is asserted and presumptively established by a defendant in a summary judgment motion, the burden shifts to the plaintiff to establish that the claim has been timely brought. *See Schnell v. Hayes,* 710 N.E.2d 208, 210 (Ind.Ct.App.1999) (citing *Mack v. American Fletcher Nat'l Bank & Trust Co.,* 510 N.E.2d 725, 733 (Ind.Ct.App.1987), *trans. denied* ).

 The facts in this case differ from those in *Fager,* in that Shults–Lewis served as Plaintiffs' foster parents/guardians and were not their adoptive or biological parents. Guardians of minors have "all of the responsibilities and authority of a parent ...." Ind.Code § 29–3–8–1(a) (1994). A guardian is a fiduciary and must therefore act in good faith to protect the minor. *See* Ind.Code § 29–3–1–6 (1994). However, guardians are not protected un-

der Indiana's parental immunity doctrine. For policy reasons, parental tort immunity shields parents from most personal injury actions brought by minor children. *See Barnes v. Barnes*, 603 N.E.2d 1337, 1339 (Ind.1992) (citations omitted). In contrast, Indiana law has held that wards can bring actions for private wrongs against guardians for neglect of duty or fraudulent conduct. *See State ex rel. Botkin v. Leffler*, 232 Ind. 541, 545, 114 N.E.2d 804, 806 (1953). Therefore, the high bar in *Barnes* and the first part of the *"Fager"* test above requiring Plaintiff to assert intentional felonious conduct against a parent, rather than mere tortious conduct, does not apply to the present facts.

An additional nuance arises where the defendant is not plaintiff's parent because Indiana law imputes knowledge of parents to children. Parents have "natural and legal obligations" to "protect and care for their children;" therefore, " 'discovery' of a cause of action by a child's parent, even absent actual cognition or memory by the child, shall be imputed to the child" and requires plaintiff to file his or her claim within two years of reaching the age of majority. *Fager*, 610 N.E.2d at 251. Consequently, an adult plaintiff who brings an action for childhood injuries against a defendant who is not the plaintiff's parent has an additional burden to show either 1) his parent or parent(s) did not know of the tortious conduct, or 2) the parent(s) knew of the tortious conduct and engaged in collusion to conceal the tortious conduct. We recognize that this reading of *Fager* disapproves prior cases. *See, e.g., Gilp v. Neville*, 681 N.E.2d 1173 (Ind.Ct.App.1997) (holding action by adults who claimed neighbor sexually abused them as children and memories were repressed was barred by statute of limitations even when parents had no knowledge

of abuse because parents should have discovered the injury); *A.M. v. Roman Catholic Church*, 669 N.E.2d 1034 (Ind.Ct.App. 1996) (holding action by adult, who recovered repressed memories, against church and priest for sexual molestation of plaintiff as child was barred by statute of limitations when parent knew of molestation and succumbed to pressure of Bishop to keep the incidents quiet).[2]

In summary, when an adult plaintiff asserts a claim for tortious conduct committed against him or her as a child and brings an action beyond the statute of limitations period against a defendant who is not a parent, *Fager* and Indiana law, properly construed, require plaintiff to: 1) show his or her parent(s) did not know of the tortious conduct, or the parent(s) knew of the tortious conduct and colluded to conceal the tortious conduct; 2) prove the tortious act alleged; 3) show that the defendant, through his own actions, breached a duty to inform or engaged in wrongful conduct which prevented the plaintiff from discovering the cause of action within the statutory period, *see Fager*, 610 N.E.2d at 251, 253; 4) provide expert opinion evidence which supports the validity of the phenomenon of repressed memory and opines that plaintiff actually repressed memory of the abuse, *see id.* at 252; and, 5) show that the plaintiff exercised due diligence in commencing her action after the equitable grounds ceased to operate (i.e., recovered her memories), *see id.* at 251, and therefore brought the claim within a reasonable time after recovering memories of the events.

Applying the above standard to the present case, we believe that the Court of Appeals correctly granted summary judgment in favor of Shults–Lewis as

---

**2.** In *Doe v. Roe*, 52 F.3d 151 (7th Cir.1995), the United States Court of Appeals interpreted *Fager* as applied to an adult plaintiff who brought an action against her mother and brother for non-consensual, incestuous acts committed by the brother against the plaintiff as a child. The Court held that our *Fager* analysis only encompassed circumstances where the parent causes injuries to the child by intentional felonious acts. *See Doe*, 52 F.3d at 156. We disagree.

regards Jane F.[3] We also agree with the Court of Appeals that Jane I.'s claim should have survived a summary judgment motion. Jane I. raised a question of fact regarding whether Shults–Lewis engaged in tortious conduct against Jane I. while at the Shults–Lewis home. Furthermore, Jane I. adequately invoked the doctrine of fraudulent concealment[4] by pointing to specific acts of Defendant which misled Plaintiff regarding the tort and her cause of action. The expert opinion testimony submitted by Jane. I. both adequately demonstrates a genuine issue of fact regarding the validity of the phenomenon of repressed memory as well as whether the abuse by Defendant caused her to repress memory of the abuse. Finally, we believe that Jane I. brought this claim within a reasonable period after discovering the abuse.

### Invocation of Fraudulent Concealment

The third showing necessary to toll the statute of limitations and avoid summary judgment requires the plaintiff to invoke the equitable doctrine of fraudulent concealment and show that the defendant, through his own actions, concealed information or engaged in wrongful conduct which caused the plaintiff to repress memories of the abuse, thereby preventing discovery of the cause of action within the statutory period. See Fager, 610 N.E.2d at 251, 253. Equitable doctrines, in contrast to the stricter rules of common law, are available to the courts to administer justice according to fairness. With respect to fraudulent concealment, "principles of equity always intervene ... to prevent a party from gaining an advantage" by wrongfully concealing an injury from one who does not become aware of the injury until a time after the statute of limitations has run. Guy v. Schuldt, 236 Ind. 101, 111–12, 138 N.E.2d 891, 895–96 (1956). To successfully invoke the equitable doctrine of fraudulent concealment and toll the statute of limitations to the time when plaintiff discovered the tort or recovered memories, plaintiffs must establish that the concealment or fraud was "of such character as to prevent inquiry, or to elude investigation, or to mislead" the plaintiff claiming the cause of action. Hughes v. Glaese, 659 N.E.2d 516, 520 (Ind.1995) (quoting Guy v. Schuldt, 236 Ind. 101, 138 N.E.2d 891, 894 (1956)). The Court of Appeals in the present case found that a plaintiff who claims repressed memory may carry this burden by presenting an expert affidavit. It stated that a "plaintiff may carry this burden by submitting an affidavit by an expert witness supporting the scientific validity of repressed memory and establishing that the plaintiff's normal powers of perception and recollection had been obscured by the repressed memory as a result of the parent's sexual abuse." Cole, 677 N.E.2d. at 1074 (citing Fager, 610 N.E.2d at 252).

While it is certainly true that an expert opinion must be provided to show that a plaintiff's memories were in fact repressed as a result of the parent's sexual abuse, the expert opinion alone is not enough to trigger the fraudulent concealment exception, and this was not our intention in Fager. In Steward v. State, we reviewed the different purposes for which expert opinions are used in cases of childhood sexual abuse and explicitly disallowed the use of expert opinion evidence to prove the defendant's acts. See 652 N.E.2d 490, 496–97 (Ind.1995). In other words, an expert opinion cannot be used as proof of the defendant's actions them-

**3.** We held in Fager that in order to estop a defendant from asserting the statute of limitations, the plaintiff must show that the fraudulent actions of the defendant prevented the plaintiff from discovering a potential cause of action until the limitation period had run. See Fager, 610 N.E.2d at 251. Where the plaintiff actually retains memories of the event, there is nothing to cause a delay in the commencement of a cause of action. There was nothing to prevent the plaintiff from bringing her claim when her legal disability ended at age eighteen.

**4.** See fraudulent concealment analysis presented infra.

selves, but can only be used to aid the jury in understanding conclusions drawn from these actions if taken as true.

To reiterate, fraudulent concealment places a burden squarely on the plaintiff to point to the fraudulent or wrongful acts of the defendant. The purpose of the expert opinion evidence is to prove that, *once the doctrine is invoked,* a reason exists for the delayed commencement of a cause of action. Our finding that an expert opinion alone is insufficient to trigger the doctrine of fraudulent concealment does not leave Jane I. without a claim. Summary judgment was inappropriate in this case because Jane I., in her deposition testimony and through other designated evidence, pointed to those acts of the defendant which, when viewed in the light most favorable to her, constitute fraudulent concealment.

As stated above, fraudulent concealment estops a defendant from asserting the statute of limitation when he has prevented the plaintiff from discovering a potential cause of action either by engaging in wrongful conduct such as deception, or by a violation of duty. *See Fager,* 610 N.E.2d at 253. The facts of the present case are sufficient to raise a material factual dispute as to whether Shults–Lewis violated a duty toward Jane I. or engaged in wrongful conduct by deceiving her.

The evidence when viewed most favorable to Jane I. shows that Shults–Lewis may be estopped from asserting the statute of limitations by reason of fraudulent concealment. Shults–Lewis owed Jane I. the duty a guardian owes a child. Indeed, Jane I. was not able to pursue a claim against her caretakers because her caretakers failed in their ongoing duty to inform her of the facts and because the abuse under the facts of this case constituted wrongful conduct, all of which concealed *from her information necessary to* bring her claim upon reaching the age of majority.

There is evidence in the record that various employees were either engaging in the abuse, or made aware of the abuse.[5] Therefore, Jane I. raised a genuine issue of material fact regarding whether the fraudulent concealment exception to the statute of limitations was triggered by deception or a violation of this fiduciary duty, making summary judgment inappropriate on this basis.

### Expert Evidence of Memory Repression

Even when an adult plaintiff bringing an action for childhood sexual abuse or other tortious conduct substantiates his or her fraudulent concealment allegations, he or she must then successfully present an explanation or excuse for his or her delay in bringing the claim beyond the statutory time frame. This is where repressed memory comes into legal play. When asserting recovered repressed memories as justification for the delayed claim, plaintiff must present expert opinion regarding his or her experience of repressed memories, and evidence sufficient for the trial court initially to determine whether the opinion is based on reliable scientific principles. Expert opinion is appropriate when it will "assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Ind. Evidence Rule 702(a). As memory repression is a phenomenon beyond the ability of the average juror to understand, expert testimony is needed to explain the phenomenon to the jury. If expert opinion testimony is needed, a "witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Evid. R. 702. Rule 702(b) imposes an additional requirement that, in order for the testimony to be admitted, *the court must be satisfied that*

---

**5.** Allen was told of inappropriate touching by Jane F., who responded that Grantham was "just trying to be friendly." (R. at 58, 132, Dep. at 47.) Shirley Kreh was made aware of the abuse, confronted Grantham about the abuse, but walked away with no more than a blanket reassurance that the abuse had not occurred, and took no further action.

the expert scientific testimony is based on reliable scientific principles.

In *Fager*, we rejected plaintiff's claim in part because she had "submitted no affidavits or depositions of qualified witnesses providing expert opinion to support the scientific validity of repressed memory and to establish that [plaintiff's] normal powers of perception and recollection had been obscured by the phenomenon as a result of her father's sexual acts with her." 610 N.E.2d at 252. However, the Plaintiff in the present case did submit an affidavit by a qualified witness opining that Jane I. had repressed memory of the abuse. This affidavit was submitted by Dr. Elgin Baker. Plaintiff's expert witness, Dr. Elgin Baker, is a licensed clinical psychologist and an associate professor at the Indiana University School of Medicine, Department of Psychiatry. He has treated several hundred survivors of childhood sexual abuse in his practice. His opinion that Jane I. repressed all memory of childhood abuse was based on his interview with Jane I., his experience with other victims of childhood trauma, and his analysis of the Minnesota Multiphasic Personality Inventory taken by Jane I.

The Plaintiffs appealed the grant of summary judgment in favor of Defendant, arguing that the Baker affidavit raised a genuine issue of material fact, making summary judgment inappropriate. Shults–Lewis responded that the affidavit could not be considered because it was not based on reliable scientific principles. The Court of Appeals, when they reversed the grant of summary judgment against Jane I., found that any challenge to the reliability of Baker's affidavit had been waived. On rehearing, the Court of Appeals found that, even had the claim of reliability not been waived, the affidavit was sufficiently reliable to raise a material factual dispute regarding whether Jane I. had repressed memories of the tortious conduct. The court concluded that:

> Shults–Lewis's argument to the contrary notwithstanding, we do not read *Fager*

as requiring, at the summary judgment stage of the proceedings, that a party asserting the phenomenon must "establish" the scientific validity of the repressed memory. Indeed the court acknowledged that its existence as well as its validity is in dispute. Rather, we read *Fager* as requiring only that the party at least provide expert testimony 'supporting' the scientific validity of the phenomenon.

681 N.E.2d 1157, 1159–60 (Ind.Ct.App. 1997).

 We disagree with the Court of Appeals that Defendant waived any argument regarding the reliability of Dr. Elgin Baker's affidavit. In order to object to an affidavit in a summary judgment proceeding, the objecting party must direct the trial court's attention to a defective affidavit. *See Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind.1990); *Avco Financial Servs. v. Metro Holding Co.*, 563 N.E.2d 1323, 1327 (Ind.Ct.App.1990) (citations omitted). "An affidavit which does not satisfy the requirements of T.R. 56(E) is subject to a motion to strike, and formal defects are waived in the absence of a motion to strike or other objection." *Gallatin Group v. Central Life Assurance Co.*, 650 N.E.2d 70, 73 (Ind.Ct.App.1995) (citing *Avco*, 563 N.E.2d at 1327). However, Shults–Lewis did direct the court's attention to the Baker affidavit, and did object to the affidavit on the grounds that it did not meet the requirements governing expert opinion testimony. Shults–Lewis, in their Reply to Plaintiffs' Response to Second Motion for Summary Judgment filed by Shults–Lewis, made the following argument:

> Even if the affidavit of Dr. Baker is considered by this court, and even if the court does not grant Shults–Lewis any continuance of the trial and the deadline for submitting materials in reply to the affidavit of Dr. Baker, the affidavit of Dr. Baker does not create a question of fact to prevent summary judgment against plaintiff. *Fager* requires expert testimony to establish the scientific va-

lidity of the theory of repressed memory. *Fager*, at 252. In addition, Indiana Rules of Evidence 702(b) provides that any of Dr. Baker's "expert" scientific testimony is admissible only if the scientific principles on which it rests are reliable. Dr. Baker does not assert that the theory of repressed memory, or any of his other opinions, rest on reliable scientific principles as required by *Fager* and by IRE 702(b).

(R. at 371.)

■ Having determined that the reliability of the Baker affidavit was properly before the court, we are now squarely faced with the question of whether the record raised a question of fact as to whether Jane I.'s memories were, in fact, repressed. We agree with the Court of Appeals that in order to raise a question of fact regarding whether Jane I. actually repressed memory of the abuse, the plaintiff need only present information supporting the scientific validity of the methodologies and processes used to form his opinion.[6] This result is reached by a careful reading of Indiana Trial Rule 56(E), which governs the use of affidavits in summary judgment proceedings, and Indiana Rule of Evidence 702(b), which governs expert opinion testimony. Indiana Trial Rule 56 requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Indiana Rule of Evidence 702(b) was designed to control the use of expert opinion testimony at trial.

■ On the other hand, the trial court is considered the gatekeeper for expert opinion evidence. *See Ford Motor Co. v. Ammerman*, 705 N.E.2d 539, 550 (Ind.Ct.App.1999) (citation omitted) (petitions for transfer pending); *see generally Steward*, 652 N.E.2d at 498. The trial court must weed out unreliable "junk science" from reliable scientific evidence. To fulfill this function, it is entrusted with the discretion to rule on the admissibility of expert opinion evidence. In order to fulfill this function at the summary judgment stage of the proceedings, the trial court certainly needs something more than a list of admissible facts and a bald conclusion drawn therefrom. Indeed, if a bald conclusion by an expert were enough to defeat a summary judgment motion, the nonmoving party would always be able to defeat such a motion by the mere presence of an expert opinion.

■ Therefore, we believe that an expert opinion affidavit submitted in a summary judgment proceeding, in addition to asserting admissible facts upon which the opinion is based, must also state the reasoning or methodologies upon which it is based. The reliability of the scientific principles need not be established, but the

---

6. Defendant rather boldly asserts that "the majority of jurisdictions have rejected the theory of repressed memory as not scientifically reliable." Br.App. at 14–15. Although we begin our response to this with this Court's opinion in *Fager*, we hasten to add that it is not at all clear that Defendant is correct. In *Fager* we declined to declare repressed memory syndrome unreliable, and we decline to do so today. Although it is true that some states disallow the tolling of the statute of limitations in cases where plaintiffs claim that repressed memories of childhood sexual abuse caused them to delay filing a claim, it is also true that many states allow such claims under a variety of theories. *See, e.g.,* Cal.Civ. Proc.Code § 340.1 (West 1999); Fla. Stat. Ann. § 95.11(7) (West Supp.1999); Or.Rev. Stat. An. § 12.117 (Supp.1998). Additionally, many states have resolved this issue through case law. *See, e.g., Hoult v. Hoult*, 792 F.Supp. 143 (D.Mass.1992), *Ault v. Jasko*, 70 Ohio St.3d 114, 637 N.E.2d 870 (1994). Indeed, if anything can be discerned from a review of the current horizon, it would be that there is no single trend among state courts on the question of repressed memory in childhood sexual abuse cases. Put simply, there is enough information supporting the theory of repressed memory that this Court cannot reject it in all cases as a matter of law. Rather, as will be explained later in this opinion, we feel that the trial court is in a better position to rule on the question of reliability.

trial court must be provided with enough information to proceed with a reasonable amount of confidence that the principles used to form the opinion are reliable. The trial court is in the best position to make such determinations, as it is in the trial court that the issue may be fully explored. This approach both allows the trial court to perform its gatekeeping function at the summary judgment stage of the proceedings and avoids placing an onerous burden upon the nonmoving party.

 Further, this approach is consistent with the approach taken by several federal appellate courts. Although not bound by a federal court's interpretation of the Federal Rules of Evidence, this Court has noted the similarity between the Indiana Rules of Evidence and the Federal Rules of Evidence, and recognized that federal case law interpreting the Federal Rules of Evidence may be of some utility, particularly with regard to the rules governing expert evidence. *See Steward v. State*, 652 N.E.2d at 498. The Seventh Circuit, in *Mid–State Fertilizer v. Exchange Nat. Bank*, 877 F.2d 1333 (7th Cir.1989), was asked to consider whether an expert opinion affidavit raised a genuine issue of material fact sufficient to avoid summary judgment. After considering the federal rules governing both summary judgment proceedings and expert opinion evidence, it found that an expert opinion must do more than supply a "bottom line." *Id.* at 1339. Federal Rule 702(b) requires that scientific expert opinion testimony be based on reliable scientific principles. *See, e.g., Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1175, 143 L.Ed.2d 238, 251 (1999). The expert opinion must contain the underlying methodologies used to form the opinion, because the trial judge must "look behind [the expert's] ultimate conclusion ... and analyze the adequacy of its foundation." *Id.* at 1339 (citing *Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823, 829–32 (D.C.Cir.1988)). In *National Diamond Syndicate, Inc. v. UPS*, 897 F.2d 253, 260 (7th Cir.1990), the

Seventh Circuit found that if "the affiant offers an expert opinion, she must give reasons for the opinion, and not merely state her conclusions." *See also Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir.1993); *Iacobelli Constr., Inc. v. County of Monroe*, 32 F.3d 19, 24–26 (2d Cir.1994); *Ambrosini v. Labarraque*, 966 F.2d 1464, 1470 (D.C.Cir.1992).

 We must analyze the Baker affidavit to determine if it provides the court with more than a bald conclusion based on admissible facts, and we find that it does. Dr. Baker based his opinion that Jane I. had repressed memory of the tortious conduct on his interview with her, his personal experience with survivors of childhood sexual abuse, and the Minnesota Multiphasic Personality Inventory (MMPI). Through his experience with his patients and his reading on the subject, he developed a list of symptoms or traits commonly shared by those who repress memories of childhood sexual abuse. He applied these factors to Jane I., and found that she had repressed her memories. He analyzed the results of Jane I.'s MMPI and found that she registered high on the repression subindex. The underlying methodologies and reasons informing Baker's opinion were adequately expressed. This affidavit therefore raised a genuine issue of material fact regarding the validity of the phenomenon of repressed memory and whether Jane I. actually repressed memories of childhood sexual abuse, and summary judgment was inappropriate on this basis.

*Cessation of Equitable Grounds as Reason for Delay*

 Where a statute of limitations has been tolled due to equitable grounds, "the equitable grounds cease when a person, once becoming an adult, knows or should have discovered that a childhood injury was sustained as a result of the defendant's tortious conduct." *Fager*, 610 N.E.2d at 251. When this occurs, the plaintiff is not bound by the statute of

limitations which was tolled by the equitable grounds, but instead, has a reasonable amount of time after the equitable grounds cease to exist within which to bring a claim. *See Hughes v. Glaese,* 659 N.E.2d at 519, 520 (citation omitted). Jane I. discovered her claim in 1990, and brought her claim in 1990. This time period is not so patently unreasonable as to justify the entry of summary judgment against Jane I. on this basis.

### Conclusion

Summary judgment in favor of Shults–Lewis was improper. Jane I. established the existence of a genuine issue of material fact as to all elements of her claim. When viewed in the light most favorable to her, the evidence shows that Shults–Lewis violated its duty to protect and care for her well-being while she was a child in the Shults–Lewis foster home. The evidence also shows that this violation is sufficient to trigger the fraudulent concealment doctrine and toll the statute of limitations if the abuse caused her to repress all memory of the abuse until shortly before bringing her claim. Furthermore, the expert opinion testimony advanced by Dr. Elgin Baker raises a genuine issue of material fact regarding whether she actually repressed memories of the tortious conduct. Finally, we believe that Jane I. brought this claim within a reasonable period of time after discovering the abuse. We affirm the result reached by the Court of Appeals, and remand to the trial court for proceedings consistent with this opinion.

DICKSON and BOEHM, J.J., concur.

SULLIVAN, J., concurs in result without separate opinion.

SHEPARD, C.J., not participating.