**Frederick William LaCAVA, Appellant–Defendant,**

v.

**Daniel LaCAVA and Geoffrey LaCava, Appellees–Plaintiffs.**

No. 49A04–0808–CV–451.

Court of Appeals of Indiana.

June 2, 2009.

Sherwood P. Hill, Clinton E. Blanck, Maurer Rifkin & Hill, P.C., Carmel, IN, Attorneys for Appellant.

R. Daniel Craven, Craven, Hoover & Blazek, P.C., Indianapolis, IN, Attorney for Appellees.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Frederick William LaCava was sued by his adopted adult sons, Daniel and Geoffrey, for damages arising out of Frederick's alleged molestation of them when they were children. Frederick filed a motion for summary judgment alleging that the complaint was filed after the running of the statute of limitations. Frederick appeals the trial court's denial of his motion, raising four issues that we consolidate and restate as two: 1) whether Daniel and Geoffrey's claims are barred by the statute of limitations, and 2) whether, in the absence of expert opinion evidence regarding Daniel and Geoffrey's claims of repressed memory, their complaint can withstand summary judgment. Daniel and Geoffrey cross-appeal the trial court's denial of their

third motion for extension of time to respond to Frederick's motion for summary judgment, alleging the trial court abused its discretion in denying them an extension for the purpose of gathering expert opinion evidence.

Concluding that issues of fact preclude summary judgment in Frederick's favor on the statute of limitations and that Daniel and Geoffrey did not need to designate expert opinion evidence to refute Frederick's motion for summary judgment because of the position Frederick took with respect to their request for additional time to procure such evidence, we affirm.

*Facts and Procedural History* [1]

The facts stated most favorably to Daniel and Geoffrey as the non-movants are as follows: Frederick and Elizabeth LaCava were married in 1966 and subsequently adopted five children—Andrew, Courtney, Sarah, Daniel, and Geoffrey.[2] Daniel was born on September 12, 1979, and Geoffrey was born on January 23, 1981. Frederick molested Daniel several times a week from the time he was "as young as [he] can remember," appellant's appendix at 98, until he was approximately twelve years old, *id.* at 103. In 1989, Daniel told Elizabeth that Frederick was molesting him and Geoffrey. Elizabeth asked Frederick to move out of the family home and they later divorced. Daniel visited Frederick at his new house and Frederick molested him there as well, but the molestations ceased when Daniel was twelve or thirteen. *Id.* at 105. Daniel claims that after the molestation stopped, he lost all memory of the events until early 2005. *Id.* at 115.

Frederick also molested Geoffrey from "as far back as [he] can remember," *id.* at 139, until he was approximately eleven years old, *id.* at 142. When Elizabeth learned that Daniel was being molested, she questioned Geoffrey and he confirmed that Frederick was molesting him as well. After he moved out of the family home at Elizabeth's request, Frederick did not molest Geoffrey further. *Id.* Geoffrey claims that after the molestation stopped, he lost all memory of the events until early 2005. *Id.* at 147.

Elizabeth did not report the molestation to the authorities when she learned about it. She did consult a lawyer who told her to "forget it." *Id.* at 184. Elizabeth and Andrew claim they had discussions with Daniel and Geoffrey after 1989 and prior to 2005 in which they acknowledged being molested. As stated above, Daniel and Geoffrey both claim they had no memory of the molestations until 2005. In 2005, Geoffrey was at Frederick's house when he found child pornography stored on Frederick's computer "and it just messed with my head and memories started coming back then." *Id.* at 148. Because Daniel was in his memories, Geoffrey spoke to Daniel about his memories of those childhood events. Geoffrey and Daniel went to their childhood home and "as soon as we stepped on the property the memories just came—everything flooding back, everything." *Id.* at 149. They then went to the police station and reported the molestations. Frederick was prosecuted and incarcerated for his crimes.

On June 21, 2005, Daniel and Geoffrey filed a civil lawsuit against Frederick seeking compensatory and punitive damages

---

1. We heard oral argument on April 9, 2009 in Indianapolis, Indiana, as part of the Indiana Trial Lawyers Association 21st Lifetime Achievement Seminar. We thank our hosts for the invitation and the attorneys for their presentations.

2. In addition, the LaCavas apparently had two foster children who resided with them during part of the relevant time.

for Frederick's conduct. They amended their complaint on October 12, 2005, to further allege that "the emotional trauma occasioned by [Frederick's] conduct caused [their] memory or recollection of the conduct to be suppressed until February 2005." *Id.* at 34. Frederick's answer, filed November 21, 2005, named Elizabeth as a nonparty whose fault contributed to Daniel and Geoffrey's injuries. Frederick's answer also raised the statute of limitations as an affirmative defense.

On February 5, 2008, Frederick filed a motion for summary judgment alleging that the statute of limitations had run and the complaint was untimely. In support of his motion, Frederick designated the affidavits of Elizabeth and Andrew. Elizabeth avers that Daniel told her he was being molested in the fall of 1989. Elizabeth then questioned Geoffrey, who agreed with everything Daniel had said and confirmed that he, too, was being molested. In 1999, in 2000, and "[f]rom time to time, at different times after 2001," *id.* at 45, Daniel talked to Elizabeth about the molestation. In 2003 or 2004, Geoffrey told Elizabeth about the molestation while they were on a trip together. In May of 2005, Daniel and Geoffrey told Elizabeth they were going to file a lawsuit against Frederick "to get money from him and claim, as part of the scam, that they only recently recovered repressed memories of past sexual abuse and molestation. . . ." *Id.* Based upon Elizabeth's numerous conversations with Daniel and Geoffrey from 1999 to 2004 regarding their molestation by Frederick, it is Elizabeth's "lay opinion that Daniel and Geoffrey both had clear and present memories of those alleged events during those times." *Id.* Andrew avers that in October 1999, Geoffrey confronted

Frederick in Andrew's driveway and accused Frederick "of being a 'child molester' and molesting him and [Daniel]." *Id.* at 49.

Daniel and Geoffrey requested and received two thirty-day extensions of time to respond to Frederick's motion for summary judgment in order to take the depositions of Elizabeth and Andrew. On April 18, 2008, Daniel and Geoffrey requested a third extension of time in order to have Geoffrey [3] evaluated by a psychiatrist and get an expert opinion on the repressed memory claim. Frederick opposed the extension because

[w]hether a psychiatrist (who has never treated [Daniel and Geoffrey]) can render an opinion that will assist the trier of fact in determining when and if [Daniel and Geoffrey's] memories were repressed is irrelevant for purposes of summary judgment if [Daniel and Geoffrey] cannot refute the testimony of [Elizabeth], who affirmed that the boys told her of [Frederick's] alleged misconduct as early as 1989 and on numerous other occasions during their minority, after they reached majority, and before their respective statutes of limitation ran.

. . . [Daniel and Geoffrey] claim that they are able to refute the factual assertions made by the affiants in the time currently allotted by the Court. If they can demonstrate a genuine issue of material fact, then they should do so without further delay.

Appellee's Appendix at 6–7. The trial court denied the extension. On May 7, 2008, Daniel and Geoffrey filed a timely response to the motion for summary judgment. In support of their objection to the entry of summary judgment, they desig-

---

3. Daniel died sometime after the complaint was filed and before the motion for summary judgment was filed.

nated depositions of Daniel, Geoffrey,[4] Elizabeth, and Andrew, and an affidavit by Geoffrey. Geoffrey avers in his affidavit that from shortly after the molestations ceased until January 2005, he had no conscious memory of the molestations and that he "reasonably believe[s] the trauma of the molestations caused [his] recollection of the conduct to be repressed." *Id.* at 220. He denies going on a trip with Elizabeth in 2003 or 2004. He states that he did go on a trip with her in 2002, but he did not talk to Elizabeth about the molestations during that trip or at any other time since his childhood. He denies telling Elizabeth he intended to perpetrate a scam by claiming repressed memory. He also denies having a verbal altercation with Frederick in Andrew's driveway in October of 1999. He further avers that in 1991 or 1992 when two foster children who had been placed in the home reported that Frederick was molesting them, Elizabeth instructed him prior to an interview by Child Protective Services not to disclose that Frederick had also molested him.

The trial court denied the motion on May 22, 2008. The trial court's order reads, in its entirety, as follows:

This action for damages is the result of repeated childhood sexual molestation by [Frederick] upon his children, [Daniel and Geoffrey]. [Daniel and Geoffrey's] cause of action was filed more than two years after each of [them] reached the age of majority. [Frederick's] Motion for Summary Judgment presents two arguments. [Frederick] contends that [Daniel and Geoffrey] did not suffer from repressed memory of the molestations and, therefore, they cannot bring this action beyond two years after they each reached the age of majority. [Frederick] also argues, *assuming* [Daniel and Geoffrey] did suffer from repressed memory, the fraudulent concealment exception to the running of the statute of limitations does not apply. The "non-offending" parent (Elizabeth Lacava) became aware of the molestations and her knowledge is imputed to the child victims. Therefore, [Frederick] argues that Elizabeth's knowledge conclusively constitutes the accrual of an action within the meaning of the disability statute and the action must fail, IC 34–1–2–5.

The Court denies [Frederick's] Motion for Summary Judgment for two reasons. First, the affidavits of Elizabeth Lacava and Joseph [5] Lacava are directly contradicted by the sworn statements of [Daniel and Geoffrey] and, therefore, there is a genuine issue of material fact about whether [Daniel and Geoffrey] had memory of the traumatic events they experienced. The trier of fact must ultimately resolve this conflict in the evidence.

Second, the parties' designation of evidence support[s] the proposition that Elizabeth Lacava was not truly a "non-offending" parent. She either really never knew that her sons were being horribly abused or she violated her duty and responsibility to protect her children, thus being an accomplice to the molestations. There is evidence that Elizabeth Lacava was likely aware of the horrible crimes her husband was perpetrating on her sons. Nonetheless, not only did she fail to protect them, she brought new foster children into the

---

4. Daniel and Geoffrey's depositions were taken by Frederick as part of his criminal case.

5. There is no "Joseph" LaCava involved in this case, and the affidavits Frederick designated with his motion for summary judgment are from Elizabeth and Andrew LaCava. This would appear to be a typographical error and should read "Andrew."

home who were also molested by [Frederick]. There is a question of fact whether Elizabeth actually knew about the molestations but, if she did, it is this court's holding that, under these circumstances, the equitable nature of the exception to the running of the statute of limitations still applies.

The doctrine of fraudulent concealment stops the offending parent from asserting the statute of limitations defense. It does not toll the statute; it is an equitable exception. *Fager v. Hundt*, 610 N.E.2d 246 (Ind.1993). The equitable exception to the running of the statute of limitations should not fail to provide for the worst of all possible scenarios: when both parents are complicit in the offense perpetrated upon the children.

THEREFORE, the Court **denies** [Frederick's] Motion for Summary Judgment.

*Id.* at 9–10 (emphases in original).

█ Frederick filed a motion to reconsider or, in the alternative, to certify the

order for interlocutory appeal. On July 7, 2008, the trial court certified its order denying summary judgment for interlocutory appeal.[6] On July 31, 2008, Frederick filed with this court his motion for leave to appeal from interlocutory order, which we granted on August 29, 2008. Additional facts will be provided as necessary.

*Discussion and Decision*

## I. Summary Judgment Standard of Review

Summary judgment is appropriate only when the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind.Ct. App.1991).

---

6. On July 11, 2008, Frederick filed with the trial court a supplemental affidavit in support of his motion for summary judgment, attaching thereto certified records from Geoffrey's incarceration in 2002, requested by his attorney on June 9, 2008, and received on July 7, 2008. Frederick's affidavit alleges the records show that on May 31, 2002—well before Geoffrey now claims to have recovered memories of the molestation—Geoffrey reported "being sexually abused by his father until age 9." *Id.* at 269; 385.

Daniel and Geoffrey request that Frederick's supplemental affidavit be stricken from the record on appeal because, although it was technically filed with the trial court and designated "in support of motion for summary judgment," it was not filed until after the trial court had already ruled on the motion for summary judgment, denied Frederick's motion to reconsider, and certified its order to this court, and therefore was not considered by the trial court and should not be considered by this court in reviewing the trial

court's order. Given that we may consider only that evidence properly designated to the trial court, *see* T.R. 56(H) ("No judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence thereto shall have been specifically designated to the trial court"); that Frederick did not request the records until after the trial court's summary judgment order; and that he did not allege to the trial court through a Trial Rule 60(B) motion that this is newly discovered evidence, the motion to strike is granted. Although Frederick claims there "is no question that the trial court would have reached a different result and granted [his] summary judgment motion against Geoffrey if the court had been able to consider this dispositive evidence," appellant's reply brief at 5, the trial court did not have the opportunity to consider the evidence due to its late filing as a supplemental affidavit, Daniel and Geoffrey did not have a chance to respond, and we will not be the first to consider the affidavit.

162

We review the grant or denial of a motion for summary judgment *de novo. Univ. of S. Ind. Found. v. Baker,* 843 N.E.2d 528, 531 (Ind.2006). We examine only those materials properly designated by the parties to the trial court. *Trietsch v. Circle Design Group, Inc.,* 868 N.E.2d 812, 817 (Ind.Ct.App.2007). We construe all facts and reasonable inferences drawn from them in favor of the non-moving party, *Am. Home Assurance Co. v. Allen,* 814 N.E.2d 662, 666 (Ind.Ct.App.2004), *trans. dismissed,* and resolve all doubts as to the existence of a material issue against the moving party, *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 249 (Ind. 1996). The movant has the initial burden of proving the absence of a genuine issue of material fact as to an outcome determinative issue and only then must the non-movant come forward with evidence demonstrating the existence of genuine factual issues which should be resolved at trial. *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.,* 644 N.E.2d 118, 123 (Ind.1994).

The party appealing the trial court's summary judgment decision has the burden of persuading us that the decision was erroneous. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 908 (Ind.2001). We are not bound by the trial court's findings and conclusions in support of its summary judgment decision, although "they aid our review by providing the reasons for the trial court's decision." *GDC Envtl. Servs. Inc. v. Ransbottom Landfill,* 740 N.E.2d 1254, 1257 (Ind.Ct. App.2000).

## II. Statute of Limitations

"The defense of a statute of limitation is peculiarly suitable as a basis for summary judgment." *Morgan v. Benner,* 712 N.E.2d 500, 502 (Ind.Ct.App.1999), *trans. denied.* When the movant asserts the statute of limitations as an affirmative defense and makes a prima facie showing that the action was commenced outside of the statutory period, the nonmovant has the burden of establishing an issue of fact material to a theory that avoids the affirmative defense. *Ling v. Webb,* 834 N.E.2d 1137, 1140 (Ind.Ct.App.2005).

The parties agree that the statute of limitations applicable to Daniel and Geoffrey's action is found at Indiana Code section 34–11–2–4: "An action for . . . injury to person or character . . . must be commenced within two (2) years after the cause of action accrues." Because Daniel and Geoffrey were minors when they were allegedly molested by Frederick, Indiana Code section 34–11–6–1, which provides that a "person who is under legal disabilities when the cause of action accrues may bring the action within two (2) years after the disability is removed," also comes into play. A person is considered "under legal disabilities" if that person is less than eighteen years of age. Ind.Code § 1–1–4–5(24). Daniel turned eighteen on September 12, 1997, making his presumptive statute of limitations September 12, 1999. Geoffrey turned eighteen on January 23, 1999, making his presumptive statute of limitations January 23, 2001. The lawsuit was filed on June 21, 2005.

A cause of action in a tort claim accrues and the statute of limitations begins to run when the plaintiff knew, or in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another. *First Farmers Bank & Trust Co. v. Whorley,* 891 N.E.2d 604, 610 (Ind. Ct.App.2008), *trans. denied.* It is not necessary that the full extent of the damage be known or ascertainable but only that some ascertainable damage has occurred. *Id.* Discovery of a cause of action by a child's parent, "even absent actual cognition or memory by the child, shall be im-

puted to the child and shall conclusively constitute the accrual of an action within the meaning of the disability statute." *Fager v. Hundt,* 610 N.E.2d 246, 251 (Ind. 1993). However, when the plaintiff's claim arises from childhood injury caused by the intentional felonious act of a parent, we cannot presume that the parent informed the child of the events. *Id.* Therefore, the doctrine of fraudulent concealment estops a parental defendant from asserting the statute of limitations "when he has, either by deception or by a violation of duty, concealed from the plaintiff material facts thereby preventing the plaintiff from discovering a potential cause of action." *Id.* (quoting *Burks v. Rushmore,* 534 N.E.2d 1101, 1104 (Ind.1989)). The fraudulent concealment doctrine does not establish a new date for the commencement of the statute of limitations; rather, it creates an equitable exception. *Id.* "When the fraudulent concealment exception applies, ... the equitable grounds cease when a person, once becoming an adult, knows or should have discovered that a childhood injury was sustained as a result of the defendant's tortious conduct." *Id.* The plaintiff must use due diligence in commencing his action once the equitable grounds cease. *Id.*

 In summary, where an adult plaintiff alleges that a parent engaged in tortious conduct against the plaintiff as a child and the complaint is filed past the presumptive statute of limitations, the plaintiff must establish that the parent engaged in intentional felonious conduct and must invoke the fraudulent concealment exception by pointing to facts "showing that her lack of memory resulted from a concealment caused by the defendant's deception or breach of duty." *Doe v. Shults–Lewis Child and Family Servs., Inc.,* 718 N.E.2d 738, 745 (Ind.1999) (quoting *Fager,* 610 N.E.2d at 252). The plain-

tiff claiming that repressed memory was the cause of the delay in filing suit against his parent must also show that the claim was brought within a reasonable amount of time after the memories were recovered. *Id.* Frederick claims the fraudulent concealment doctrine does not apply in this case because there is no dispute that Elizabeth knew about the molestations in 1989 and her knowledge should be imputed to Daniel and Geoffrey. He further claims the doctrine does not apply because his designated evidence shows Daniel and Geoffrey did not in fact suffer from repressed memories until 2005, but rather had present memories of the molestation throughout their lives.

### B. Elizabeth's Knowledge

██ In keeping with *Jarboe,* we note first that Frederick, as the movant, had the burden of establishing the absence of a genuine issue of material fact as to a determinative issue—here, the applicability of the fraudulent concealment exception to extend the presumptive statute of limitations. In meeting that burden, Frederick designated evidence that Elizabeth knew about the molestations in 1989, while Daniel and Geoffrey were still minors; that she had conversations with Daniel as early as 1999 and with Geoffrey in 2003 or 2004 about the molestations; and that Andrew heard Geoffrey confront Frederick about the molestations in 1999. The burden then shifted to Daniel and Geoffrey to come forward with evidence demonstrating the existence of a genuine issue of fact for trial.

There is no factual dispute that Elizabeth learned of the molestations in 1989, while Daniel and Geoffrey were still minors. As held in *Fager,* a parent's discovery of a child's cause of action is conclusively imputed to the child, subject to the fraudulent concealment exception. 610

N.E.2d at 252. Frederick contends that because Elizabeth knew about the molestations and was not the offending parent, by law the fraudulent concealment exception is not applicable and Elizabeth's knowledge is imputed to Daniel and Geoffrey, giving them each two years after reaching the age of majority in which to bring their claims. He relies on a case in which the Seventh Circuit Court of Appeals declined to apply the fraudulent concealment exception to an adult plaintiff's case against her mother and brother for non consensual, incestuous acts committed by the brother. *Doe v. Roe*, 52 F.3d 151, 155 (7th Cir.1995). The plaintiff had argued that *Fager* should be applied to cases where "a parent is part of the 'dynamics' which allows the abuse to occur or who is in collusion with the actual perpetrator." *Id.* at 153. The court disagreed, interpreting the fraudulent concealment exception announced in *Fager* to apply only to "actions by parents which result in injuries to their children, not omissions by parents which allow injuries to occur." *Id.* at 155.

Our supreme court in *Shults–Lewis* disagreed with the Seventh Circuit's interpretation that *Fager* "only encompassed circumstances where the parent causes injuries to the child by intentional felonious acts," 718 N.E.2d at 746 n. 2, and held that *Fager* applied to the case of intentional felonious acts by a non-parent, provided the plaintiff could prove that his parent or parents either did not know of the tortious conduct or knew and engaged in collusion to conceal it. 718 N.E.2d at 746. Daniel and Geoffrey contend that if the fraudulent concealment exception applies to an action against a non-parent if the plaintiff can prove that his parent or parents knew and colluded to conceal the molestation, it should also apply to an action against one parent under the same proof as to the other parent.

Daniel and Geoffrey allege that the evidence shows Elizabeth "was complicit in, in collusion with, and acted to conceal [Frederick's] activities." Brief of Appellees at 14. Although there is no allegation that Elizabeth was directly involved in the molestation, it is undisputed that although Elizabeth knew about the molestation in 1989, she did not report the molestation to the authorities. She did talk to an attorney who told her to "forget it," appellant's app. at 184 (Elizabeth's deposition), and she did tell Frederick to move out of the family home. However, Frederick continued to reside in the home for nearly two months after Elizabeth learned of the molestations, and Elizabeth allowed Frederick to have unsupervised visitation with the children after he moved out. There is also evidence that when Child Protective Services investigated reports that Frederick molested two foster children residing in the home, Elizabeth told Geoffrey not to reveal Frederick had molested him. Daniel and Geoffrey also point out that Frederick named Elizabeth as a nonparty to the action. A nonparty is defined as "a person who caused or contributed to cause the alleged injury ... but has not been joined in the action as a defendant." Ind. Code § 34–6–2–88. They argue that this designation demonstrates Frederick's acknowledgement that Elizabeth caused or contributed to their injuries.

The imputation rule is premised upon "the natural and legal obligations of parents to protect and care for their children," *Fager*, 610 N.E.2d at 251, and the assumption that when harm comes to a child, his or her parents "will observe, remember, and later communicate their knowledge of such events to the child," *id.* Although there is no dispute that Elizabeth knew about the molestations during the boys' minority, there is, at the very least, a question of fact regarding whether her conduct upon learning of the molestations

amounted to collusion with Frederick in concealing the molestation from Daniel and Geoffrey. We therefore hold that Frederick was not entitled to summary judgment on the basis that Elizabeth's knowledge is imputed to Daniel and Geoffrey to conclusively establish the accrual of their action and require filing within two years of reaching the age of majority.

### B. Daniel and Geoffrey's Knowledge

 Frederick also contends that the designated evidence shows Daniel himself knew about the molestation as early as 1989 when he first told Elizabeth about the molestation, but no later than 2001 when he talked with Elizabeth about the molestation. *See* Appellant's App. at 45 (Elizabeth's affidavit). Frederick further contends that the designated evidence shows Geoffrey knew about the molestation as early as 1989 when he confirmed what Daniel had told Elizabeth and told her about his own molestation, but no later than October 1999 when he accused Frederick of being a child molester in front of Andrew. *See id.* at 49 (Andrew's affidavit). In short, Frederick claims that his designated evidence[7] shows Daniel and Geoffrey did not have repressed memories of the molestation at all, but that if they did, they recovered their memories long before February 2005, as alleged in their complaint. *See Shults–Lewis,* 718 N.E.2d at 747 n. 3 ("Where the plaintiff actually retains memories of the event, there is nothing to cause a delay in the commencement of a cause of action.").

Daniel and Geoffrey designated evidence refuting the factual claims made in Frederick's designated evidence. Daniel's deposition testimony squarely confronted and denied several of the factual assertions later made in Elizabeth's affidavit. *See* Appellant's App. at 96 (Daniel denying that he told Elizabeth he wanted to "shake [his] father down for some money."); 114 (Daniel stating that he did not remember in 2004, 2003, or "as far back as you can remember to age 12" that Frederick molested him). Geoffrey refuted Elizabeth and Andrew's specific claims in his own affidavit, claiming the alleged pre–2005 conversations about the molestation never occurred. Geoffrey's deposition testimony also refuted several of the factual assertions made in Elizabeth and Andrew's affidavits. *See id.* at 166 (Geoffrey stating that prior to seeing the pornographic images on Frederick's computer he had no memory of ever being molested). Thus, there is an issue of fact as to whether the conversations which Frederick claims prove Daniel and Geoffrey had present memories of the molestations before 2005 took place, and Frederick was therefore not entitled to summary judgment.

### III. Expert Testimony

 Finally, Frederick claims that even if the fraudulent concealment doctrine applies despite Elizabeth's knowledge of the molestations, and even if there is an issue of fact as to whether Daniel and Geoffrey remembered the molestations prior to 2005, Daniel and Geoffrey's failure to designate expert opinion evidence to support their repressed memory claim is fatal. In *Shults–Lewis,* our supreme court held that "[e]ven when an adult plaintiff

---

7. Daniel and Geoffrey claim that Elizabeth and Andrew's affidavits alleging conversations about the molestation prior to February 2005 are insufficient to meet Frederick's initial burden to show the absence of a genuine issue of material fact because of inconsistencies and bias. Trial Rule 56(E) requires supporting and opposing affidavits to be made "on personal knowledge, ... set[ting] forth such facts as would be admissible in evidence, and ... show[ing] affirmatively that the affiant is competent to testify to the matters stated therein." Elizabeth and Andrew's affidavits meet this threshold. Alleged inconsistencies and bias are matters for a trier of fact to resolve.

bringing an action for childhood sexual abuse or other tortious conduct substantiates his or her fraudulent concealment allegations, he or she must then successfully present an explanation or excuse for his or her delay in bringing the claim beyond the statutory time frame." 718 N.E.2d at 748. When asserting repressed memories as the explanation, the "plaintiff must present expert opinion regarding his or her experience of repressed memories, and evidence sufficient for the trial court initially to determine whether the opinion is based on reliable scientific principles." *Id.*[8]

▮ The only evidence in the record regarding Daniel and Geoffrey's repressed memory claim is their own assertions in the complaint and in their deposition testimony that they had no memory of the molestations until early 2005. Geoffrey avers in his affidavit designated in response to Frederick's motion for summary judgment that:

6. From shortly after Frederick La-Cava's molestations ceased until January 2005, I had no conscious memory of the molestations.

7. I reasonably believe the trauma of the molestations caused my recollection of the conduct to be repressed.

Appellant's App. at 220. Conclusory statements are generally disregarded in determining whether to grant or deny a motion for summary judgment. *Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind.1990). Daniel and Geoffrey's self-serving statements are insufficient to prove their repressed memory claims, and it is undisputed that there is no expert opinion evidence in the record generally supporting the scientific validity of the repressed memory phenomenon and specifically supporting the conclusion that Daniel and Geoffrey suffered from repressed memories caused by the molestation.

▮ Although it is clear that expert testimony will be required in order for Daniel and Geoffrey ultimately to prevail on their claims, we hold that such testimony is not required at this stage of this case.[9] Daniel and Geoffrey sought a third extension of time to respond to the summary judgment motion for the purpose of obtaining a psychiatric evaluation of Geoffrey and an opinion on the validity of his repressed memory claim. Appellees' App. at 3. Although conceding that expert testimony will be required at some point to prove their repressed memory claims, Daniel and Geoffrey contend that Frederick waived the need for expert testimony on summary judgment when he objected

8. The court noted that an expert opinion, while required to show that a plaintiff's memories were in fact repressed as a result of a parent's sexual abuse, is not alone sufficient to trigger the fraudulent concealment exception. *Id.* at 747. The plaintiff must prove an injury from the intentional felonious act of apparent; that his lack of memory of those acts resulted from the parent, by deception or breach of duty, concealing material facts from the plaintiff; that the plaintiff suffered from repressed memories; and that the claim was brought within a reasonable time after the memories were recovered. *Id.*

9. As noted above, Daniel died before the summary judgment motion was filed. The only evidence from him is in the form of a deposi-

tion he gave as part of Frederick's criminal case. Daniel and Geoffrey concede that expert testimony on whether their memories were in fact repressed is required as part of the burden of showing the fraudulent concealment exception applies. It does not appear such testimony will be available in Daniel's case as an expert had apparently not been retained prior to Daniel's death, and Daniel's counsel conceded at oral argument that he will be unlikely to prevail on Daniel's claim. Although we have held that Daniel's claim should withstand summary judgment, it would not be inappropriate for Daniel to be voluntarily dismissed from this litigation before proceeding further.

to their motion for extension of time by claiming that "[w]hether a psychiatrist ... can render an opinion that will assist the trier of fact in determining when and if [their] memories were repressed is irrelevant for purposes of summary judgment if [they] cannot refute the testimony of their mother.... [They] claim that they are able to refute the factual assertions made by [Elizabeth].... If they can demonstrate a genuine issue of material fact, then they should do so...." *Id.* at 6–7. Frederick argues that his objection was only meant to convey that Daniel and Geoffrey had had more than enough time to respond and that he did not voluntarily relinquish his right to hold Daniel and Geoffrey to their burden of proof.

Frederick claimed in his motion for summary judgment that Daniel and Geoffrey have always had present memories of the molestations, based primarily on certain conversations he alleges they had with Elizabeth. Frederick's opposition to Daniel and Geoffrey's motion for extension of time was correct in asserting that an expert could not prove those conversations did or did not happen and was irrelevant for that purpose. It does not appear that Frederick challenged repressed memory as a scientifically valid phenomenon, nor that he challenged that Daniel and Geoffrey did not remember the molestations *because of* repressed memory, both of which will require expert opinion evidence. In short, if Frederick's opposition did not outright narrow the issue on summary judgment to whether or not Daniel and Geoffrey could refute the facts alleged in Elizabeth's affidavit, it is at best unclear

what his opposition meant, and we cannot say that Frederick should be granted summary judgment based on Daniel and Geoffrey's lack of expert opinion evidence at this juncture.[10]

### Conclusion

Genuine issues of material fact regarding whether the applicable statute of limitations should be extended pursuant to the fraudulent concealment doctrine preclude summary judgment in Frederick's favor. Moreover, expert opinion testimony was not required to refute Frederick's motion because of the nature of Frederick's opposition to Daniel and Geoffrey's request for time to procure expert evidence. Accordingly, the trial court's order denying summary judgment is affirmed, and this case is remanded to the trial court for further proceedings.

Affirmed.

RILEY, J., and KIRSCH, J., concur.

---

10. Given our resolution of this issue, we need not specifically address Daniel and Geoffrey's cross-appeal regarding the trial court's denial of their third motion for extension of time to respond to Frederick's motion for summary judgment. Daniel and Geoffrey sought an extension of time in which to procure psychiatric evaluation of Geoffrey regarding his claim of repressed memory. As we have held that expert opinion testimony was not required at this time, any error in the trial court's denial of their motion for extension of time was harmless.