Marlene CLARK, Appellant–Plaintiff,

v.

Roger SPORRE, M.D., OB/GYN Consultants, LLC, and Dale Sloan, M.D., Appellees–Defendants.

No. 02A05–0110–CV–421.

Court of Appeals of Indiana.

Nov. 6, 2002.

Mary Beth Ramey, Bonnie L. Foster, Ramey & Hailey, Indianapolis, IN, Attorneys for Appellant.

Cathleen M. Shrader, John M. Clifton, Jr., Tina M. Bell, Barrett & McNagny LLP, Fort Wayne, IN, Attorney for Appellees Roger Sporre, M.D., and OB/GYN Consultants, LLC.

Mark W. Baeverstad, Hunt Suedhoff Kalamaros LLP, Fort Wayne, IN, Attorneys for Appellee Dale Sloan, M.D.

## OPINION

BAKER, Judge.

Appellant-plaintiff Marlene Clark appeals the judgment on her medical malpractice claim entered in favor of appellees-defendants Roger Sporre, M.D., OB/GYN Consultants, LLC, and Dale Sloan, M.D. First, Clark contends that the trial court erroneously barred her expert witness, a neuropsychologist, from testifying about the cause of her mental impairment. Second, Clark challenges the trial court's refusal to admit into evidence her video compilation, which contained edited and rearranged videotaped-deposition testimony favorable to her malpractice claim. Finally, Clark argues that two jury instructions were erroneous and prejudicial. One jury instruction explained the composition and responsibilities of a medical review panel, and the other limited proof of causation to expert witness testimony.

We need not decide whether a neuropsychologist may render an expert opinion on medical causation. The causation opinion of Clark's expert was speculation, lacking any basis in the record. As for the video compilation, the trial court was within its discretion to exclude it from evidence because the compilation resulted in a misimpression. Further, all three video depositions, from which the compilation was created, were later admitted into evidence in their entirety. Regarding the jury instruction on the medical review panel, Clark has shown no abuse of discretion in giving it. And, because causation was not a disputed issue, any error in the instruction limiting proof of causation to expert-witness testimony would have been harmless. Therefore, we affirm.

## FACTS

The facts most favorable to the verdict show that, before the surgery at issue

here, Clark had had a ten-year history of abdominal pain, diarrhea, and chronic fever. No cause for Clark's symptoms was ever found despite various tests and consultations.[1] Clark's family doctor sent her to the Mayo Clinic, the University of Chicago, the Loyola Medical Center, and various Fort Wayne medical centers. None of these medical centers were able to find the cause of Clark's symptoms. By the time Clark was referred to Dr. Sporre, the record of Clark's procedures, tests, and consultations totaled nearly 800 pages.

In 1993, Clark's family doctor referred her to Dr. Sporre, a gynecologist, because a CT scan had found evidence of ovarian cysts. A surgical evaluation was required to determine whether the cysts were malignant and whether the cysts were related to her symptoms. Dr. Sporre decided to perform a laparoscopy, an outpatient procedure involving a small abdominal incision and the insertion of a scope to evaluate Clark's pelvic area, including her ovaries, for cancer or an abscess. During the procedure on February 16, 1993, Dr. Sporre noticed that the scope had punctured Clark's small bowel. He then summoned the general surgeon, Dr. Sloan, to assist in repairing the perforation. Dr. Sloan repaired the perforation and examined the small bowel for other signs of injury but found none.

After the procedure, Clark's condition deteriorated, leading her treating physicians to conclude that she could be suffering from an undetected bowel perforation. Three days later, Dr. Sloan again operated on Clark, discovered the perforation, and repaired it. For several months Clark was critically ill due to the three days spent with the undetected perforation. She experienced "multi-organ failure, including respiratory failure, renal failure requiring dialysis, and ventilator dependence." Appellant's App. p. 88. Clark also required a tracheostomy, tube feeding, and drainage of an abscess.

Exactly two years after the first surgery, Clark filed her proposed complaint for damages with the Indiana Department of Insurance. The medical review panel later issued a unanimous opinion in favor of Drs. Sporre and Sloan. Thereafter, Clark filed suit in the Allen Circuit Court against Drs. Sporre and Sloan and OB/GYN Consultants. Among other damages, Clark claimed that a hypoxic event arising from the complications of the surgery caused her mental impairment.

At trial, Clark introduced Gregory Sowles, Ph.D., as her expert witness. Dr. Sowles received his Ph.D. in psychology, cognate and neuropsychology, in 1991. Dr. Sowles testified that he had tested Clark for mental impairment and that the results indicated uniformly that Clark had undergone a change for the worse from her prior mental state. He went on to describe the extent of the alleged injury and potential causes of the injury in general. Defense counsel objected when Dr. Sowles was asked—based on his background, education, clinical training, and the testing that he had conducted on Clark—if her "brain injury was more probably than not related to her hospitalization in 1993." Appellant's App. p. 29–30. Defense counsel objected on the grounds that Dr. Sowles was not a licensed physician and the fact that he had not reviewed Clark's hospital records. The trial court

---

1. These tests included several colonoscopies, a parendoscopy, a small bowel enterolysis, several abdominal ultrasounds, several small bowel series, an endoscopic retrograde colongeo pancreolithotomy, several abdominal CT scans, several flexible sigmoidoscopies, several echocardiograms, several abdominal X-rays, several CT scans of the pelvis, and a pelvic ultrasound.

prohibited Dr. Sowles from testifying that it was his opinion that Clark's brain injury was caused by events surrounding Clark's surgery and hospitalization, namely a "hypoxic event" where oxygen was blocked from Clark's brain for a period of time. Nothing in Clark's hospital record indicated that a hypoxic event had occurred.

In addition to Dr. Sowles's testimony, Clark sought to introduce a videotape containing the edited portions of videotaped-deposition testimony given by the three members of the medical review panel. By agreement of the parties before trial, the members of the medical panel would not testify live at trial but through their videotaped depositions. Clark's thirty-nine-minute tape consisted of excerpts meant to "counter the defendants' experts' findings as members of the medical review panel that Defendants Sporre and Sloan did not breach the standard of care in their care and treatment of Marlene Clark." Appellant's Br. p. 5–6. Defense counsel objected that the edited version would take the witnesses' testimony out of context and asserted that the entire deposition must be shown. The trial court sustained the objection, and so the videotaped depositions were shown in their entirety during the defendants' presentation of their case.

After the presentation of evidence, Clark objected to two jury instructions. The first instruction discussed the composition and responsibilities of the medical review panel. The second stated in part "that expert testimony is necessary in this case both to establish the standard of care to be exercised by physicians and to establish whether or not the alleged malpractice was the proximate cause of the injuries claimed." Sporre's Appellees' App. p. 191. The trial court overruled Clark's objections. At the jury trial's conclusion, judgment was entered in favor of Drs. Sporre

and Sloan and OB/GYN Consultants. Clark now appeals.

## DISCUSSION AND DECISION

### I. Expert Opinion on Causation

Clark first contends that the trial court erroneously refused to allow Dr. Sowles to testify that it was more probable than not that the surgery and hospitalization caused her mental impairment. She argues that the foundation required by Ind. Evidence Rule 702 had been satisfied. That rule provides:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

Evid. R. 702. The trial court is considered the gatekeeper for expert opinion evidence. *Doe v. Shults–Lewis Child & Family Servs., Inc.*, 718 N.E.2d 738, 750 (Ind.1999). To fulfill this function, it is entrusted with the discretion to rule on the admissibility of expert opinion evidence. *Id.* The trial court's exclusion or admission of expert testimony will be reversed only for abuse of that discretion. *Cook v. State*, 734 N.E.2d 563, 570 (Ind.2000).

Speculation will not pass for an expert opinion under Rule 702. *See Howerton v. Red Ribbon, Inc.*, 715 N.E.2d 963, 966 (Ind.Ct.App.1999) ("Knowledge admissible under the Rule must connote 'more than subjective belief or unsupported speculation.' ") (quoting *Hottinger v. Trugreen Corp.*, 665 N.E.2d 593, 596 (Ind.Ct.App. 1996)), *trans. denied.* To be admissible, an expert's opinion that an event caused a

particular injury must be based on something more than coincidence. *See Hannan v. Pest Control Servs., Inc.,* 734 N.E.2d 674, 682 (Ind.Ct.App.2000), *trans. denied.* An expert's opinion on causation in a medical malpractice case must rest on " 'an application of particular scientific facts to particular data about the instant case.' " *Ind. Mich. Power Co. v. Runge,* 717 N.E.2d 216, 237 (Ind.Ct.App.1999) (emphasis removed) (quoting *Porter v. Whitehall Labs., Inc.,* 791 F.Supp. 1335, 1345 (S.D.Ind.1992)). An expert witness who "lacks detailed knowledge" of a plaintiff's "current medical condition and past medical history" has no basis to give an opinion on causation under Rule 702. *See id.* ("Unlike the [plaintiffs'] treating physicians, all of whom stated that they did not diagnose EMF as the cause of the [plaintiffs'] alleged injuries, Smith lacks both a medical degree and detailed knowledge of [the plaintiffs'] current medical conditions and past medical histories, which would form the critical factual basis for his expert opinions.").

 In the instant case, the parties did not dispute that Dr. Sowles was qualified to discuss the evaluation of Clark's mental impairment and the nature and extent of that impairment. The parties did dispute whether Dr. Sowles was qualified to opine that the surgery and subsequent hospitalization caused Clark's mental impairment. Even assuming that Dr. Sowles's credentials and experience made him qualified to give such an opinion, nothing in Clark's hospital record indicates that a hypoxic event occurred. Moreover, Dr. Sowles never reviewed any of the record of Clark's hospitalization. Hence, his conclusion that Clark suffered a hypoxic event leading to a mental impairment is without any factual basis and so amounts to speculation. The trial court did not err in excluding his opinion testimony on causation.

## II. Compilation of Videotaped–Deposition Testimony

 Clark next contends that the trial court erred in excluding her compilation of selected portions of videotaped-deposition testimony. In addressing her contention, we first turn to Ind. Trial Rule 32, which governs the use of depositions in court proceedings:

(A) **Use of depositions.** At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, *so far as admissible under the rules of evidence* applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition....

. . . .

(4) If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which ought in context to be considered with the part introduced, and any party may introduce any other parts.

. . . .

(B) **Objections to admissibility.** Subject to the provisions of Rule 28(B) and subdivision (D)(3) of this rule, *objection may be made at the trial or hearing to receiving in evidence any depositions or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying.*

T.R. 32 (emphases added). The party offering a deposition into evidence bears the burden of establishing its admissibility. *Gates v. Rosenogle,* 452 N.E.2d 467, 472 (Ind.Ct.App.1983). The admission of depositions into evidence is within the discretion of the trial court, and we will reverse the trial court's decision only for an abuse of that discretion. *Smith v. State,* 702

N.E.2d 668, 675 (Ind.1998). Where the presentation of a partial deposition results in a misimpression, there is no abuse of discretion in excluding the presentation from evidence. *See Manning v. Allgood,* 412 N.E.2d 811, 813–14 (Ind.Ct.App.1980) (holding that there was no misimpression, and thus no error in admitting selected portions of deposition testimony into evidence, where the plaintiff's presentation "place[d] the deponents' statements in chronological order so the jury could better understand the sequence of events").

In the instant case, Clark moved to admit a compilation of selected portions of videotaped-deposition testimony given by the three doctors on the medical review panel. On appeal she acknowledges that each panelist found that the defendants did not breach the standard of care. But she wished to highlight with the compilation the fact that none of the doctors "support[ed] the choice of Dr. Sporre to do a *closed* laparoscopy ... *due to the increased risk factors that Ms. Clark possessed.*" Appellant's Br. p. 18 (emphases added).

A review of some of the selected portions in context reveals that the compilation creates a misimpression. First, Clark's compilation presented Dr. Canal testifying that he would not have performed the closed laparoscopy on Clark and that his "personal practice" is to use an open laparoscopy. Appellant's App. p. 67, 68. Clark omitted Dr. Canal's testimony that he performed two open laparoscopies resulting in bowel injuries and that "the literature is replete with instances of open laparoscopy" resulting in "bowel injuries." Appellant's App. p. 68. Second, Clark's compilation presented Dr. Deaton testifying that, had Clark come to him as a patient, he would have referred her to a general surgeon because, in his words, "I did not find anything from a gynecological

standpoint in the record that would necessitate surgery from my standpoint." Appellant's App. p. 94. But Clark omitted Dr. Deaton's testimony qualifying his response: "But let me state with that[,] that all gynecologists have different comfort levels for what surgeries they will perform and not—and that doesn't mean that, by doing it, that's below the standard of care. I don't mean that at all. It's just that for myself with her history I would have a general surgeon do the case." Appellant's App. p. 95. Finally, Clark's compilation presented Dr. Edwards testifying that he would have classified Clark as a high-risk candidate for surgery. The out-of-context testimony implies that Dr. Sporre did not classify Clark as a high risk. Appellant's App. p. 167. However, Dr. Edwards's answer to the next deposition question shows that Dr. Sporre had classified Clark as a high risk. Appellant's App. p. 167.

Given that the selected portions of testimony created a misimpression, Clark has failed to show the trial court erred in excluding it. And even if the trial court had erred in excluding the compilation, Clark has failed to show why exclusion was prejudicial to her case. The depositions were shown in their entirety to the jury, and she was later able to highlight the portions of testimony favorable to her case. *See Manns v. State,* 541 N.E.2d 929, 936 (Ind.1989) ("[A]n error in the exclusion is harmless when the record discloses that excluded evidence was otherwise presented to the jury."), *recognized as superseded in part on other grounds in Mendenhall v. Skinner & Broadbent Co.,* 728 N.E.2d 140, 143 (Ind.2000); *Hite v. Haase,* 729 N.E.2d 170, 180 (Ind.Ct.App.2000) (holding, in a medical malpractice case, that the exclusion of an expert witness's testimony did not warrant reversal where it was cumulative of other testimony presented). As a result, we will not reverse the decision of the trial court to exclude the compilation.

### III. Jury Instructions

In addition to the two evidentiary rulings discussed above, Clark challenges the use of two final jury instructions. The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Chandler v. State*, 581 N.E.2d 1233, 1236 (Ind.1991). Appellate review of a jury instruction requires a timely trial objection clearly identifying both the claimed objectionable matter and the grounds for the objection. Ind. Trial Rule 51(C); *Scisney v. State*, 701 N.E.2d 847, 849 (Ind. 1998). But the tender of a proposed alternative instruction is not necessarily required to preserve the claim of error. *See Scisney*, 701 N.E.2d at 849. To be erroneous, instructions must either as a whole misstate the law or otherwise mislead the jury. *Clark v. State*, 732 N.E.2d 1225, 1230 (Ind.Ct.App.2000). Jury instructions are within the discretion of the trial court, and we will not reverse unless there is an abuse of that discretion. *Id.*

### A. Medical Review Panel

Clark first challenges the following Indiana Pattern Jury Instruction on the composition and responsibilities of the medical review panel:

> The law required that this case be presented to a medical review panel before the plaintiff could bring suit. A medical review panel consist[s] of three physicians, *one selected by the plaintiff, a second selected by the defendant, and a third selected by the other two doctors.* While a disinterested attorney chairs the medical review panel he has no vote. Only the physician members on the panel may decide the issues of standard of care and causation.
>
> The report of the medical review panel is not conclusive on any of the issues you are to decide and you may give it such weight as you deem appropriate.

Sporre's Appellee's App. p. 164 (emphasis added). Clark maintains that the instruction misled the jury into believing that the medical review panel was supplied with a doctor who was her "advocate, or at least a chosen ally." Appellant's Br. p. 21. In reality, no doctor on the resulting panel was selected by Clark; she had only selected doctors for a striking panel in accord with Indiana Code section 34–18–10–10.[2] According to Clark, this misinformation was catastrophic to her case because the jury would suppose that even her "chosen ally found against her." Appellant's Br. p. 21. To remedy the misinformation, Clark wished to strike the phrase: "one selected by the plaintiff, a second selected by the defendant, and a third selected by the other two doctors."

The instruction nowhere refers to a physician as an ally of either party. Nor does the instruction necessarily imply that a selected physician champions the cause of his selector. The instruction simply informs the juror that the panelist is chosen

---

**2.** Indiana Code section 34–18–10–10 provides:

> Within ten (10) days after the selection of a panel member, written challenge without cause may be made to the panel member. Upon challenge or excuse, the party whose appointee was challenged or dismissed shall select another panelist. If the challenged or dismissed panel member was selected by the other two (2) panel members, the panel members shall make a new selection. If two (2) such challenges are made and submitted, the chairman shall within ten (10) days appoint a panel consisting of three (3) qualified panelists and each side shall, within ten (10) days after the appointment, strike one (1) panelist. The party whose appointment was challenged shall strike last, and the remaining member shall serve.

to "decide" the issues of negligence and causation. Sporre's Appellee's App. p. 164. If a physician were an advocate for his selector, there would be no need to "decide" anything.

Given the testimony of each of three panelists, it is unlikely the instruction would have insinuated that a panelist is his selector's champion. First, Dr. Canal testified that he never spoke with any of the parties before forming his opinion of the case. Appellant's App. p. 54. After reviewing the information and forming an initial opinion, Dr. Canal testified he tried to keep an open mind when he met with the other two panelists. He testified that he had fulfilled his oath to render an opinion without bias and to base his opinion on the evidence submitted by the parties. Second, Dr. Deaton testified that he did not speak with any of the parties or their attorneys before forming his opinion and that he fulfilled the same oath. Appellant's App. p. 76–77. Finally, Dr. Edwards testified that he did not speak with any of the parties or their attorneys before forming his opinion and that he fulfilled the same oath. Appellant's App. p. 123. In short, Clark has failed to show an abuse of discretion. *Clark*, 732 N.E.2d at 1230.

Clark also complains that the instruction should have indicated that only Indiana physicians may serve on a medical review panel. She speculated that Hoosier physicians are less likely than non-Hoosier physicians to find Indiana medical-malpractice defendants liable. Clark was free to raise the issue of bias to the jury, which she did during closing argument. Sporre's Appellee's App. p. 190. Clark, though, has also failed to show how omitting the panelist's citizenship misstated the law or misled the jury. *Clark*, 732 N.E.2d at 1230. Accordingly, she has not shown that the trial court abused its discretion in refusing to modify the instruction. *See id.*

### B. Expert Testimony Necessary for Establishing Causation

■ Clark also objected to the following instruction because it requires expert testimony to establish the issue of causation:

You are instructed that expert testimony is necessary in this case both to establish the standard of care to be exercised by physicians and to establish whether or not the alleged malpractice was the proximate cause of the injuries claimed. In determining the standard of care and in determining the issue of proximate cause, you will be guided solely by the experts who have testified on the subject. You may not speculate or guess nor may you determine these issues from any other source other than the testimony of medical experts.

Sporre's Appellee's App. p. 191. Clark correctly notes that our supreme court has reserved the question of whether a plaintiff must prove causation through a medical expert's testimony. *See Ind. Univ. Med. Ctr. v. Logan*, 728 N.E.2d 855, 860 n. 3 (Ind.2000) (reserving the issue and citing three Indiana Court of Appeals cases which hold that a medical expert is required to prove causation).

We need not decide whether the instruction was erroneous because causation was not an issue. First, the trial court correctly excluded Dr. Sowles's testimony on the cause of Clark's alleged mental impairments. Thus, his testimony would not have been available for juror consideration, nor should it have been. Second, as for Clark's other injuries, the defendants acknowledged that those injuries resulted from the surgery. During closing argument, counsel for Dr. Sporre conceded there was "absolutely no dispute" that Dr. Sporre had perforated Clark's small intestine and that as a result Clark was hospitalized for four or five months. Sloan's

Appellee's App. p. 75. Likewise, counsel for Dr. Sloan admitted that Clark had a "very bad outcome" as a result of the procedure. Sloan's Appellee's App. p. 80. Clark also introduced into evidence medical bills totaling a little over $360,000 without objection. Sloan's Appellee's App. p. 1–3. The only issue to be decided was whether the doctors were negligent.

■ An erroneous instruction merits reversal only if it could have formed the basis for the jury's verdict. *Fleetwood Enters., Inc. v. Progressive N. Ins. Co.*, 749 N.E.2d 492, 495 (Ind.2001). The instruction on causation could not have formed the basis of the jury's verdict because causation was not an issue. Thus, reversal is not merited.

### CONCLUSION

In conclusion, the trial court did not err in barring Clark's expert witness from giving an opinion on the cause of Clark's mental impairment because that opinion was based only on speculation. Nor did the trial court err in refusing to admit Clark's video compilation into evidence, where the deponents' edited statements would have left the jury with a misimpression and where the depositions were eventually played in their entirety. Finally, the instruction on the medical review process was not an abuse of discretion, and the instruction on proof of causation, even if erroneous, could not have formed the basis for the jury's verdict.

Judgment affirmed.

VAIDIK, J., and BARNES, J., concur.