Frank J. AKEY, as Personal Representative of the Estate of Wayne Akey, Appellant–Plaintiff,

v.

PARKVIEW HOSPITAL, INC., Edwin L. McEowen, M.D., and Professional Emergency Physicians, Inc., Appellees–Defendants.

No. 02A04–1007–CT–441.

Court of Appeals of Indiana.

Jan. 25, 2011.

Dennis R. Brown, Dennis H. Geisleman, Fort Wayne, IN, Attorneys for Appellant.

Edward L. Murphy, Jr., Heidi K. Koeneman, Milford M. Miller, Mark W. Baeverstad, Andrew L. Palmison, Fort Wayne, IN, Attorneys for Appellees.

## OPINION

SULLIVAN, Senior Judge.

Plaintiff–Appellant Frank J. Akey (Akey), as Personal Representative of the Estate of Wayne Akey, appeals the trial court's summary judgment in favor of Defendants–Appellees Parkview Hospital, Inc. (Hospital), Edwin L. McEowen, M.D., and Professional Emergency Physicians, Inc. (Physicians). We reverse and remand.

On December 7, 2002, Wayne Akey, age 89, came to the Hospital's emergency room suffering from an apparent heart attack. McEowen, the physician on duty, conferred with cardiologist Michael Mirro, M.D. Mirro ordered one-half dose of TNKase, which is a thrombolytic medicine that breaks up blood clots, one-half dose of ReoPro, which is a platelet inhibitor, and Heparin. The hospital staff administered the one-half dose of TNKase and the Heparin, but instead of ReoPro, the staff erroneously administered a one-half dose of Retavase, which is another thrombolytic medicine. On December 9, 2002, Wayne Akey suffered an intercranial hemorrhage, and he died on January 9, 2003.

Akey filed a proposed complaint for damages with the Indiana Department of Insurance against the Hospital, McEowen, and Physicians. The case was submitted to a medical review panel. Two members of the panel concluded that McEowen and Physicians' conduct met the appropriate standard of care, but the Hospital's conduct did not meet the appropriate standard of care. Those two panelists were unable to determine whether the Hospital's conduct was or was not a factor in the resultant damages. The third panelist concluded that there was a material issue of fact, not requiring expert opinion, bearing on liability.

The case proceeded to court, and the Hospital filed a motion for summary judgment. The Hospital noted that Mirro had offered an expert opinion as to causation on Akey's behalf and contended that Mirro's opinion was inadmissible. Furthermore, the Hospital argued that without Mirro's expert opinion, there was no dispute of material fact as to whether the Hospital caused Wayne Akey's injuries and death. McEowen and Physicians joined in the Hospital's motion. Akey filed a response, and the trial court conducted a hearing. On June 21, 2010, the trial court granted summary judgment in favor of the Hospital, McEowen, and Physicians. In its final judgment, the trial court determined, in relevant part:

> The Court finds that Dr. Mirro's foregoing opinions would be inadmissible and therefore may not be considered by the Court in determining if a genuine issue of material fact as to causation exists. [Hospital] designates the Opinion of the Medical Review Panel in which two of the panelists were of the opinion that the conduct of [Hospital] was not a factor of Wayne Akey's damages. Akey has failed to offer evidentiary material that counters the opinions of the two panelists and demonstrates the existence of a genuine issue of material fact on the issue of causation.

Appellant's App. p. 13. This appeal followed.

Akey raises three issues, which we consolidate and restate as:

I.  Whether the trial court abused its discretion in excluding Mirro's expert witness evidence.

II.  Whether the trial court erred by granting summary judgment to the Hospital, McEowen, and Physicians.

## I.  EXCLUSION OF MIRRO'S EXPERT OPINION

■ The admission or exclusion of expert opinions is governed by Indiana Evidence Rule 702, which provides:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

In this case, there is no dispute that Mirro is qualified as an expert pursuant to Indiana Evidence Rule 702(a). Instead, the parties dispute whether Mirro's expert opinion on causation is based on reliable scientific principles pursuant to Indiana Evidence Rule 702(b).

■ The trial court is considered the gatekeeper for expert opinion evidence. *Doe v. Shults–Lewis Child and Family Servs., Inc.,* 718 N.E.2d 738, 750 (Ind. 1999). In determining whether scientific evidence is reliable, the trial court must determine whether such evidence appears sufficiently valid or, in other words, trustworthy, to assist the trier of fact. *Shafer*

*& Freeman Lakes Envtl. Conservation Corp. v. Stichnoth,* 877 N.E.2d 475, 484 (Ind.Ct.App.2007), *trans. denied.* We will reverse the court's determination only if it is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable and actual deductions to be drawn therefrom. *Id.*

Our Supreme Court has not established a specific test for the scientific admissibility of evidence pursuant to Indiana Evidence Rule 702(b). *See id.* One helpful standard is the five factors set out by the United States Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 593–94, 113 S.Ct. 2786, 2796–97, 125 L.Ed.2d 469 (1993). *Stichnoth,* 877 N.E.2d at 484. However, our Supreme Court has not mandated the application of *Daubert* and has chosen alternative approaches in the past. In *Shults–Lewis,* the plaintiffs, as adults, sued a children's home where they had been subjected to sexual abuse as children. 718 N.E.2d at 742. One of the issues on appeal was the admissibility of an expert witness's opinion testimony on repressed memories of childhood sexual abuse. *Id.* The victims, in opposition to the children's home's motion for summary judgment, tendered an affidavit by an expert witness. *Id.* at 749. The Supreme Court held:

an expert opinion affidavit submitted in a summary judgment proceeding, in addition to asserting admissible facts upon which the opinion is based, must also state the reasoning or methodologies upon which it is based. The reliability of the scientific principles need not be established, but the trial court must be provided with enough information to proceed with a reasonable amount of confidence that the principles used to form the opinion are reliable.

*Id.* at 750–751. The Court determined that the expert witness's affidavit dis-

cussed the expert's experiences with patients and his readings on the subject of repressed memories of childhood sexual abuse. *Id.* at 751. Based on these experiences, the expert developed a list of traits for repressed memories of childhood sexual abuse and found that the victims shared those traits. *Id.* The Court concluded that the expert's affidavit adequately expressed his underlying methodologies and reasons for his opinion and raised a genuine issue of material fact. *Id.*

In this case, Akey attached to his summary judgment filings an affidavit by Mirro. In addition, the Hospital, McEowen, and Physicians took Mirro's deposition, and the parties provided excerpts from his deposition to the trial court in their summary judgment filings. In his affidavit submitted in opposition to the motion for summary judgment, Mirro stated that his expert opinions were based on his "education, training, and experience and are expressed within a reasonable degree of medical certainty." Appellant's App. p. 150. The evidence reveals that Mirro, in addition to being a board certified cardiologist who maintains a private practice, is also a clinical professor at the Indiana University School of Medicine. He is also certified as a specialist in geriatric internal medicine. Mirro has conducted clinical research projects on a number of medications and participated in a published paper on the hemorrhagic complications of thrombolytic therapy. In his deposition, Mirro clarified the basis for his expert opinion as follows:

> Q. If there's no scientific studies to say that that half-dose of Retavase increased his risk of bleeding on what basis do you form the opinion in your Affidavit?
>
> A. As I mentioned, elderly patients, particularly very elderly, like this, who were given thrombolytic agents, they—there's—at least there's the suggestion

that they're not cleared correctly, so we have no idea. That being stated, you'd have to—the primary result of any thrombolytic agent is intracranial hemorrhage. All the studies that—that we do on thrombolytics, all of them have shown a significant risk of intracranial hemorrhage. In this particular circumstance, we're giving a patient who is very old a combination of drugs that's never been studied. And, so I'd have to conclude that that is the primary factor in his poor outcome. 

> Q. How can you reach that conclusion when he had the same statistical risk of bleeding had he been given ReoPro instead of the Retavase?
>
> A. We don't know that. He received two different drugs that could potentially have interacted, and we have no idea about the pharmakenetics of those drugs together in acute MI management.
>
> Q. Well, if you don't have any of that information how can you form an opinion that it caused his bleed?
>
> A. Due to the fact that I've taken care of a lot of patients, it's my opinion that that caused the bleed. And, I've taken care of a lot of patients, and elderly patients who have received thrombolytic therapy. And—again, you know, we actually looked at—going back to my CV, the—the article published by the student, we reviewed the case series from Parkview's experience on that particular complication.

Appellant's App. pp. 33–34. Mirro also testified that he had reviewed a series of trials between 2001 and 2005 regarding the use of thrombolytic therapy in comparison with heart catheterizations that shaped his opinion on the use of thrombolytic therapy to treat elderly patients. We conclude that this evidence, like the evidence in *Shults–Lewis*, adequately describes the reasoning and methodologies upon which

Mirro's scientific evidence is based. We further conclude that the evidence provides a reasonable amount of confidence that the principles upon which Mirro's opinion is based are reliable.

The Hospital, McEowen, and Physicians note that Mirro conceded in his deposition that his theory that the interaction of the specific thrombolytic medicines at issue here caused Wayne Akey's cerebral hemorrhage has not been scientifically tested, discussed in medical literature, or subjected to peer review. Mirro also conceded that he had no idea whether his theory would be accepted by the medical community at large. Therefore, pursuant to the *Daubert* factors, the Hospital, McEowen, and Physicians conclude that Mirro's theory of causation is unreliable. We reiterate that there is no set standard in Indiana to judge the scientific reliability of expert witness testimony. Based on the facts of this case, the *Shults–Lewis* case provides helpful guidance in considering whether the trial court properly excluded Mirro's expert opinion.

The cases of *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901 (7th Cir.2007), and *Bickel v. Pfizer, Inc.*, 431 F.Supp.2d 918 (N.D.Ind.2006), which McEowen and Physicians cite in support of excluding Mirro's testimony, are distinguishable. In both of those cases, the federal courts applied the *Daubert* factors. By contrast, as we have already noted, Indiana has not mandated the use of the *Daubert* factors to determine the reliability of expert witness testimony pursuant to Indiana Evidence Rule 702(b). In the current case, our Supreme Court's holding in *Shults–Lewis* is the more appropriate authority.

The Hospital cites *Clark v. Sporre*, 777 N.E.2d 1166 (Ind.Ct.App.2002), to support its position, but that case is distinguishable. In *Clark*, this Court affirmed the exclusion of an expert witness' testimony

as to whether the plaintiff's injuries were caused by a complication during surgery. *Id.* at 1168. The expert had offered an opinion that a "hypoxic event" had occurred during surgery and caused the injury at issue. *Id.* at 1170. The record did not reflect that a hypoxic event had occurred. *Id.* Furthermore, the expert had not reviewed the plaintiff's hospital records. *Id.* at 1171.

By contrast, in this case Mirro did not hypothesize about an event that is not reflected in the record. All of the parties agree that Wayne Akey experienced a cerebral hemorrhage. Mirro has offered a scientifically reliable theory for the causes of the hemorrhage, which the trier of fact may accept or reject. Consequently, *Clark* is not controlling here.

■ In addition, the Hospital, McEowen, and Physicians assert that Mirro's position on the relationship between the combination of thrombolytic medications and the chance of intercranial hemorrhage is contradicted by a study. However, the existence of differing opinions on the subject goes to the weight that Mirro's opinion should receive, not its scientific reliability. When considering the admissibility of expert witness evidence pursuant to Indiana Evidence Rule 702(b), "[t]he focus is solely on principles and methodology, not on the conclusions that they generate." *Norfolk S. Ry. Co. v. Estate of Wagers*, 833 N.E.2d 93, 103 (Ind.Ct.App.2005), *trans. denied.*

■ Although this court held in *Wallace v. Meadow Acres Manufactured Hous., Inc.*, 730 N.E.2d 809, 818 (Ind.Ct. App.2000), *trans. denied,* that to be admissible, expert scientific evidence "must be supported by reliable principles independent of [the witness's] expertise in the field," that rationale is not cause for us to reject the proposition that a witness's edu-

cation, experience, knowledge and training is adequate to permit the trier of fact to give such weight and credence to the opinion testimony as it is inclined to do. This is not an opening of the door to "junk science" nor to unreliable and unsupported opinions. *See Shults–Lewis*, 718 N.E.2d at 750. It is merely an acceptance that reasonable expert opinions are not to be summarily excluded on grounds that the opinion has not been subjected to general acceptance by others in the field or proved by testing and peer review. Such opinions, so long as not based wholly upon speculation and conjecture, are entitled to be given due consideration.

The opinion of our Supreme Court in *Kovach v. Caligor Midwest*, 913 N.E.2d 193 (Ind.2009), is instructive. There, the Court held as a matter of law that an allegedly defective medication measuring cup's markings and absence of a warning were *not* a proximate cause of the patient's death. *Id.* at 198. Rather, it was the administration of twice the medication that had been prescribed which was the cause of death. *Id.*

The case before us is the precise reverse factual situation. Here, there can be no doubt that the negligent administration of twice the dosage of thrombolytic medication that had been prescribed was very possibly, if not probably, the primary causative factor in Akey's death. At a minimum, the circumstances present a genuine issue of fact preventing a summary judgment for defendants. Coupled with a consideration of Dr. Mirro's opinion, the matter of causation should be resolved by the trier of fact.

For these reasons, we conclude that the trial court's exclusion of Mirro's expert testimony on causation was an abuse of discretion, and his evidence should have been considered in summary judgment proceedings.

## II.  SUMMARY JUDGMENT

A court shall grant a motion for summary judgment "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Normally, summary judgment is not appropriate in medical malpractice cases based upon negligence. *Aldrich v. Coda*, 732 N.E.2d 243, 245 (Ind.Ct.App. 2000). We review a summary judgment order de novo. *Kovach*, 913 N.E.2d at 196. We construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party. *Id.* at 197.

In general, a plaintiff must prove each of the elements of a medical malpractice case, which are that: (1) the physician owed a duty to the plaintiff; (2) the physician breached the duty; and (3) the breach proximately caused the plaintiff's injuries. *Bhatia v. Kollipara*, 916 N.E.2d 242, 245 (Ind.Ct.App.2009) (quotation omitted).

In this case, having excluded Mirro's expert testimony, the trial court concluded that Akey had failed to demonstrate a genuine issue of material fact on the question of causation. We have concluded that Mirro's evidence should have been considered. Mirro's affidavit and deposition testimony give rise to a genuine issue of material fact as to whether the erroneous administration of thrombolytic drugs caused Wayne Akey's cerebral hemorrhage and subsequent death. Therefore, the trial court's grant of summary judgment must be reversed. *See Sword v. NKC Hosp., Inc.*, 714 N.E.2d 142, 153 (Ind.1999) (determining that the plaintiff's expert witness tendered an opinion that demonstrated a dispute of material fact as to causation and reversing the trial court's grant of summary judgment).

## CONCLUSION

For these reasons, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.

DARDEN, J., and ROBB, C.J., concur.