## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 03 2020, 10:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEY FOR APPELLEE

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Billy Gene Luke,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 3, 2020

Court of Appeals Case No.
19A-CR-2229

Appeal from the Dearborn Circuit Court

The Honorable James D. Humphrey, Judge

Trial Court Cause No.
15C01-1812-F5-90

**Bailey, Judge.**

# Case Summary

[1] Billy Gene Luke ("Luke") appeals his convictions and sentences for three counts of Criminal Stalking, as Level 6 felonies.[1] We affirm.

# Issues

[2] Luke presents the following four consolidated and restated issues:

 I. Whether the admission of certain evidence amounted to fundamental error;

 II. Whether Luke was subjected to double jeopardy, prohibited by the Indiana Constitution;

 III. Whether he was denied the effective assistance of counsel; and

 IV. Whether his consecutive sentences for three Level 6 felonies exceeds that permitted by Indiana Code Section 35-50-1-2.

# Facts and Procedural History

[3] In 2011, Luke engaged in conduct toward Trisha Rowlette Caldwell ("Caldwell") and her co-workers at the Deville Pharmacy in Dillsboro that prompted Luke's prosecution for public indecency. In 2012, Caldwell appeared

---

[1] Ind. Code § 35-45-10-5.

as a witness for the State in that trial. Luke was convicted as charged and began to take retaliatory actions toward Caldwell. He was subsequently convicted of Invasion of Privacy and Attempted Invasion of Privacy (for his conduct toward Caldwell) and Criminal Mischief (for damage to property of Caldwell's husband and the pharmacy).

[4] Undeterred by those convictions, in 2016, 2017, and 2018, Luke sent a prolific quantity of materials to Caldwell's residence. Some were mailed from correctional institutions where Luke was housed; some were ordered from a third-party book supplier. The materials were variously addressed, to Trisha Rowlette, Trisha Caldwell, Trisha Luke, Neon Tiger, or names of adult entertainment actresses. They were typically signed "Billy Luke, 15-41, Dillsboro's Finest."[2] (State's Ex. 7.) The materials included sympathy cards, birthday cards, a Pay Day candy bar wrapper, a copy of a criminal judgment defaced with the word "void," handwritten letters and drawings, sexually explicit books, and a writing described by the trial court as "a treatise on insurgent warfare." (Sent. Order at 4.) Luke made numerous overt and veiled threats of violence against Caldwell and expressed his abundant disdain for legal proceedings. The gist of the communications was that Caldwell had wronged Luke and could repay her debt by submission to sexual acts with him.

___

[2] This was the badge number assigned to the Dillsboro Chief of Police.

Luke also claimed that he was keeping Caldwell and her co-workers safe because it was expedient for his civil rights lawsuit.

[5] On December 18, 2019, the State brought charges against Luke, related to Caldwell's receipt of materials in 2016, 2017, and 2018. After three amendments, Luke was charged with four counts of Criminal Stalking, one as a Level 5 felony and three as Level 6 felonies, and one count of Invasion of Privacy, as a Class A misdemeanor. Initially, Luke represented himself with standby counsel. He moved to dismiss the charges against him on the basis of having identified an alternate suspect; he also moved to dismiss some prospective witnesses but sought to depose forty-two others. He was granted funds for a handwriting expert and leave to take the deposition of a fingerprint expert.

[6] The trial court subsequently determined that Luke had forfeited his right of self-representation and appointed two attorneys to act as defense counsel. The appointed attorneys were granted leave to withdraw after reporting that Luke had threatened each of them and their families. Successive counsel was appointed, and Luke was brought to trial before a jury on July 22, 2019.

[7] On July 26, 2019, a jury convicted Luke of one count of Harassment, as a lesser-included offense of Level 5 felony Criminal Stalking, three counts of Level 6 felony Criminal Stalking, and one count of Invasion of Privacy. At the State's instance, the trial court dismissed the harassment count. Sua sponte, to avoid double jeopardy concerns, the trial court expressly declined to enter a

judgment of conviction upon the verdict of guilt for Invasion of Privacy. On August 22, 2019, the trial court imposed upon Luke three consecutive sentences of two and one-half years each.[3] In imposing the maximum aggregate sentence of seven and one-half years, the trial court found no mitigators and found Luke's criminal history (consisting of six felonies, twenty-two misdemeanors and eight probation violations) to be a significant aggravator. Luke now appeals.

# Discussion and Decision

## Admission of Evidence

[8] Indiana Code Section 35-45-10-1 defines stalking as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." In turn, harassment means "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." I. C. § 35-45-10-2.

---

[3] Pursuant to Indiana Code Section 35-50-2-7, one convicted of a Level 6 felony faces a sentence of six months to two and one-half years.

[9] The State alleged that Luke stalked Caldwell by sending her materials that included threats of physical and sexual violence and, in support of those allegations, the State elicited testimony from the victim, law enforcement officers, and expert or skilled witnesses. The State also offered into evidence numerous items of documentary evidence. On appeal, Luke contends that the trial court should have excluded testimony from the State's handwriting and fingerprint examiners, as well as State's Exhibit 13, a thirteen-page letter received by Caldwell. He complains that all the exemplar comparison testimony was offered without a scientific basis and that the jury was likely confused by the prosecutor's invitation to consider Exhibit 13 as evidence of Luke's intent, relative to all counts. Because he did not object on this basis at trial, Luke is constrained to arguing only fundamental error. *Absher v. State*, 866 N.E.2d 350, 354 (Ind. Ct. App. 2007).

[10] A claim of fundamental error is available only to address egregious circumstances. *Id.* To qualify as fundamental error, "an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible" and must "constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002) (internal quotations and citations omitted).

[11] Indiana Evidence Rule 702(a) provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Here, the trial court admitted trial and deposition testimony from Indiana State Police forensic scientists assigned to handwriting and fingerprint analysis divisions. Luke claims that the trial court failed to act as a proper gatekeeper of the evidence. *See Clark v. State*, 777 N.E.2d 1166, 1170 (Ind. Ct. App. 2002) ("The trial court is considered the gatekeeper for expert opinion evidence" and is afforded discretion in admitting such evidence).

[12] Prior to trial, the State obtained Luke's handwriting exemplars for comparison to handwritten portions of materials Caldwell had received.[4] Lauren Logan ("Logan") testified that she was a forensic document examiner with ten years of experience and a master's degree in forensic science administration. She explained that she employed procedures consistent with the methodology of the Indiana State Police Forensic Document Unit Test Methods and she described her procedures in some detail. She further explained the process of technical review, which included submission of samples to a supervisor if the examiner and a peer review examiner disagreed as to conclusions. Caldwell identified a

___

[4] Luke was court-ordered to produce a handwriting sample. He attempted to submit a comparison document but declined to compile a sample while under observation. Ultimately, the Indiana State Police obtained one writing sample as a result of a search of Luke's cell and another writing sample from a prison disciplinary review file.

range of opinion certainty, with categories of definitive identification, qualified identification, highly probable, probable, and indications of identification.

[13] Luke does not explain what additional foundational evidence was warranted. At bottom, he seems to present an argument as to the weight of the evidence and not its admissibility. He argues that Logan "failed to exclude or even consider other sources." Appellant's Brief at 22. He also observes that Logan employed the phrase "far from conclusive" on several occasions, suggesting that Logan was uncertain of her ultimate conclusions. The record does not support this supposition. Logan examined documents phrase by phrase and parsed her conclusions. For example, in examining a card and envelope, Logan expressed confidence that Luke had addressed the envelope and was the author of the block print on the card, but found it "far from conclusive" as to whether he had written an "additional phrase" on the card.[5] (Tr. Vol. IV, pg. 10.) Luke's suggestions of equivocation fall far short of showing fundamental error in the admission of testimony.

[14] Indiana State Police forensic scientist Stephanie Snodgrass ("Snodgrass") testified that she was assigned to the latent fingerprint identification unit, and that she holds a master's degree in forensic science. Like Logan, Snodgrass explained the analysis methodology and the peer review process. She testified

---

[5] Logan opined that Luke's handwriting appeared on mail received by Caldwell on July 5, 2016 (State's Ex. 3), July 29, 2016 (State's Ex. 5), May 11, 2017 (State's Ex. 7), November 9, 2017 (State's Ex. 9), January 16, 2018 (State's Ex. 13), December 3, 2018 (State's Ex. 15), December 30, 2019 (State's Ex. 17), May 11, 2018 (State's Ex. 19), and May 17, 2016 (State's Ex. 22).

that Luke's fingerprint exemplars were obtained from the Indiana State Police archives and compared with fingerprints obtained from materials received by Caldwell. In Snodgrass's opinion, some of the fingerprints on the mailed materials were Luke's.

[15] Again, Luke fails to point to additional foundational evidence that would have been warranted. Instead, he points to testimony that officers were often not wearing gloves when touching items, that fingerprint comparison includes some element of subjectivity, and that a fingerprint might, in rare circumstances, be lifted with an adhesive tape. He summarizes: "[the evidence] should have been excluded as inherently unreliable, in light of the contamination, bias and subjectivity involved in her review." (Appellant's Brief at 23.) Again, the bald assertion falls far short of revealing fundamental error.

[16] With regard to State's Exhibit 13, a lengthy letter replete with threats and descriptions of sexual battery, Luke complains that the jury was invited to consider the exhibit as evidence of his intent relative to each count. In the letter, Luke stated: "you bitches stalked me, now I am obsessively stalking the shit out of you and punishing you for the rest of your lives." (State's Ex. 13.) Luke does not argue that explicit evidence of his intent lacked relevance. Rather, he asserts that the jury was likely "confused and misled" by the letter, Appellant's Brief at 24, but fails to fully develop an argument in this regard. That said, the jury was invited in closing argument to consider Luke's stated agenda when determining his culpability upon each count. As best we can discern, Luke's actual challenge to State's Exhibit 13 is that he was convicted of

multiple offenses based upon the same evidence.  We proceed to address his double jeopardy argument.

# Double Jeopardy

[17]    The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense."  IND. CONST. art. 1, § 14.[6]  In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), our supreme court concluded that two or more offenses are the same offense in violation of Article 1, Section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one offense also establish the essential elements of another charged offense.  Our supreme court subsequently explained:

> The *Richardson* actual evidence test was carefully and deliberately crafted to provide a general formulation for the resolution of all actual evidence test claims.  The language expressing the actual evidence test explicitly requires evaluation of whether the evidentiary facts used to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.  The test is not merely whether the evidentiary facts used to establish one of the essential elements of one offense may also have been used to establish one of the essential elements of a second challenged offense.  In other words, under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also

---

[6] Luke does not articulate a separate argument under the United States Constitution.

establish only one or even several, but not all, of the essential elements of a second offense.

*Spivey v. State*, 761 N.E.2d 831, 832-833 (Ind. 2002). Based upon the evidence admitted and argument of counsel, it is likely that the jury considered the evidence of Luke's stated intent relative to more than one count against him. However, the evidence of intent did not establish "all of the essential elements of a second offense." *See id.* at 833. Although there were multiple counts for the jury's consideration, there was independent evidence as to at least one element of each separately charged and factually supported offense. We find no double jeopardy violation.

## Effectiveness of Counsel

[18] Luke contends he was denied the effective assistance of trial counsel because counsel failed to adequately consult with Luke and vigorously present exculpatory evidence. Effectiveness of counsel is a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland*. *Id.* To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and resulting prejudice. *Dobbins v. State*, 721 N.E.2d 867, 873 (Ind. 1999) (citing *Strickland*, 466 U.S. at 687). Deficient performance is that which falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687; *see also Douglas v. State*, 663 N.E.2d 1153, 1154 (Ind. 1996). Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Cook v. State*, 675 N.E.2d 687, 692 (Ind. 1996). The two prongs of the *Strickland* test are separate and independent inquiries. *Strickland*, 466 U.S. at 697. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.*

[19] We "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). Counsel is to be afforded considerable discretion in the choice of strategy and tactics. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. *Id.* In sum, trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside the objective standard of reasonableness. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998).

[20] During his self-representation, Luke made plain his position that he had been systemically harassed and ultimately had been unfairly targeted for prosecution. He filed for dismissal of all charges and named as an alternate suspect fellow

inmate John Wayne Miller ("Miller").[7]  Although Luke now suggests that he was deprived of his chosen defense by counsel's decisions, the trial record indicates otherwise.

[21] Luke testified at some length, at times in narrative form.  He alleged that he had been wrongfully convicted in the past, his rights had been ignored in this case, and, historically, law enforcement officers had harassed him.  He strongly suggested that evidence had been manipulated so as to frame him, claiming "there was no fingerprint initially" and then "mysteriously" the "story changed."  (Tr. Vol. IV, pg. 231.)  Luke opined that physical evidence had been contaminated, the contamination was ignored, and "somehow they're rendering [fingerprint] results for me." *Id.* at 235.  Luke described the police investigation as "not broad" and "pinpointed toward me." *Id.* at 243.  He observed that his proffered writing sample had been refused for examination.  He insisted that there must have been a "manipulation of an order form" whereby prisoners could obtain books, because he had not sent books to Caldwell. *Id.* at 229.  According to Luke, the "only plausible explanation" is that Miller used Luke's name and Department of Correction number. *Id.* at 249.  Luke claimed that he could barely write because of a hand injury.  Using a homemade device called a "Cadillac," Luke conducted an in-court demonstration to show that items could be moved from cell to cell.  However,

---

[7] Forensic document examiner Logan had discovered an impression of Miller's handwriting on a notebook under examination in this case.

Luke and Caldwell each testified that neither of them knew Miller. The jury rejected Luke's defense.

[22] Now, Luke makes a bald assertion that counsel "refused to consult" with him. Appellant's Brief at 29. To the extent Luke suggests that his trial attorney failed to conduct a sufficiently thorough investigation of the facts, he does not point to additional relevant evidence that would have surfaced. The jury's rejection of Luke's defense is not attributable to inadequacy on the part of counsel. Trial counsel's efforts and strategy, although they did not ultimately achieve the result desired by Luke, were not so unreasonable as to constitute ineffective assistance of counsel. *See Badelle v. State*, 754 N.E.2d 510, 539 (Ind. Ct. App. 2001) (deciding in relevant part that, when trial counsel's efforts were "more than adequate" to support a chosen defense, counsel's decision not to seek out additional witnesses was a judgment call within the wide range of reasonable assistance), *trans. denied*.

# Consecutive Sentences

[23] Luke also argues that the trial court abused its sentencing discretion in imposing consecutive two-and-one-half-year sentences for each of his convictions. The aggregate length of consecutive sentences is limited by statute when they are not for crimes of violence and when they arise out of a single episode of criminal conduct. I.C. § 35-50-1-2. For non-violent Level 6 felony offenses arising out of one episode of criminal conduct, the statutory cap is four years. I.C. § 35-50-1-2(d). Criminal Stalking is not a crime of violence under Indiana Code

section 35-50-1-2(a), and thus Luke's consecutive aggregate seven-and-one-half-year sentence was proper only if the convictions did not arise from a single episode of criminal conduct.

[24] Whether certain offenses constitute a single episode of criminal conduct is a fact-intensive inquiry to be determined by the trial court. *Slone v. State*, 11 N.E.3d 969, 972 (Ind. Ct. App. 2014). A single episode of criminal conduct is defined as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35-50-1-2(b). The focus is on the timing of the offenses and the simultaneous and contemporaneous nature, if any, of the crimes. *Williams v. State*, 891 N.E.2d 621, 631 (Ind. Ct. App. 2008). Our supreme court has described the ability to "recount each charge without referring to the other" as relevant, but not critical, in determining whether conduct constitutes a single episode of criminal conduct. *Reed v. State*, 856 N.E.2d 1189, 1200 (Ind. 2006). An "episode" is an occurrence or series of occurrences and developments that may be viewed as distinctive and apart, even though it may be part of a larger or more comprehensive series. *Johnican v. State*, 804 N.E.2d 211, 217 (Ind. Ct. App. 2004).

[25] Luke contends that "everything alleged to have been done is part and parcel of a single continuance [sic] series of events." Appellant's Brief at 31. He argues that stalking by nature involves repeated or continuous harassment and the State employed an "arbitrary division" when drafting the charging Information. *See id.* We acknowledge that stalking as defined in Indiana involves conduct that is repeated or "continuing in nature." *Falls v. State*, 131 N.E.3d 1288, 1291

(Ind. 2019). In other circumstances, Luke's argument might be more compelling. But Luke sent Caldwell numerous fungible items, originating from three correctional facilities and a book supplier, over a three-year span of time.

[26] In considering Luke's statutory claim, the trial court observed the following. Relative to Count II, for conduct occurring from May 1, 2016 to October 7, 2016, when Luke was in Westville Correctional Facility, Luke sent Caldwell two books of an explicit sexual nature, sympathy and birthday cards addressed to Jenna Jameson, a sympathy card addressed to "Dixie Normis," a card with a quote referencing blood of tyrants, and a birthday card addressed to Linda Lovelace with drawings of bullets and a rifle. Relative to Count III, for conduct occurring from May 1, 2017 to January 16, 2018, when Luke was housed at Westville and the Dearborn County Law Enforcement Center, the following materials were sent: a birthday card to "Neon Tiger," a sympathy card to Jenna Jameson with a reference anticipating death, a book titled "The New Jim Crow" and the thirteen-page letter replete with threats of physical and sexual battery. Relative to Count IV, for conduct occurring from May 1, 2018 to December 29, 2018, when Luke was incarcerated in LaPorte County and Dearborn County jails, he sent a birthday card with a battle quote, a commentary on insurgent warfare, a thank you card referencing steps that lead to the grave, and a thank you card observing that a false witness will not go unpunished and a liar will not escape. Clearly, each offense could be recounted without reference to the other. With each facility transfer, Luke decided to use his mail privileges to bombard his victim with threatening, obscene, and

harassing materials. His conduct was not limited to a single episode within the meaning of Indiana Code Section 35-50-1-2.

# Conclusion

[27] Luke was not denied a fair trial by the admission of expert testimony or State's Exhibit 13. He was not subjected to double jeopardy, nor was he denied the effective assistance of trial counsel. The statutory limitation for a single episode of criminal conduct is not applicable to Luke's consecutive sentences.

[28] Affirmed.

Crone, J., and Altice, J., concur.